[No. 6011–1.  Division One.  March 5, 1979.]

*In the Matter of the Welfare of* MICHELLE AKERS, ET AL, MELINDA HEARD, *Appellant.*

750

*Philip J. Bertenthal* of *Northwest Washington Legal Services,* for appellant.

*Slade Gorton, Attorney General, Kenneth MacIntosh, Assistant, Knappe & Knappe, P.S.,* and *Charleton F. Knappe,* for respondent.

DORE, J.—Melinda Heard appeals from an order permanently depriving her of all parental rights to her children.

ISSUES

1. Whether the parent's constitutional right of due process was violated by the court interviewing the children and taking testimony from a caseworker outside of court which evidence was not subject to cross–examination or rebuttal testimony which apparently the trial court used in making its decision ordering permanent deprivation.

2. Whether a trial judge may consider evidence of the adoptability of children in making his decision in a deprivation hearing.

FACTS

On September 12, 1975, a petition of dependency and permanent deprivation was filed in the Juvenile Court of Snohomish County on behalf of the three minor children of Melinda Heard. Evidence showed that the children had been removed from the mother's care approximately 2 years previously because at that time the children had been found in the home unattended. The children have remained in foster care in Snohomish County since that time. Later the mother moved to Seattle where she worked mostly as a part–time bartender.

The Assistant Attorney General, representing the Department of Social and Health Services, in opening

statement advised the court what he hoped to prove to establish abandonment in order to justify deprivation:

The basis of the petition is essentially that these children were placed in foster care in the summer of 1973 and have remained in foster care until the present time. During that period of time, the mother has visited with the children and for three Christmases has had one or two other visits with the children this year. That is the only personal contact this mother had had with these children despite the work of the Department to get her to assume her responsibility for the care and custody of these children.

The State is alleging essentially abandonment of the children by the mother.

The mother countered by alleging that she had never abandoned her children but had been working in Seattle and had no transportation and had requested the department on a number of occasions to place her children in foster care in the Seattle area to enable her to visit them on a regular basis.

At the conclusion of the hearing, outside the presence of the mother, the court interviewed the two older children and apparently dispatched the caseworker to interview prospective parents for adoptive purposes and received a report back from such caseworker. The only evidence we have of these outside court activities is the trial court's memorandum opinion. We will set forth what we consider the pertinent parts of that memorandum:

At the conclusion of the hearing the court advised the parties and their counsel that the court would interview the two oldest children in chambers with respect to their observations and wishes in the matter. This interview was held on the following morning in the presence of Ms. Joan Kyle, a court probation officer. The children, Michelle and Malcolm, appeared to have given considerable thought to their future. *They expressed the wish to "give mom one more chance" as an alternative to the department's proposal of placing the children in several unknown prospective adoptive homes.* They were not asked about the prospect of adoption by the families that had previously been suggested by Michelle namely the

neighbors and one of her teachers. The reason the court did not ask the children concerning this was the attitude of the department concerning these prospective homes. After further consideration, the court instructed Ms. Kyle to determine whether the teacher and his wife were viable adoptive candidates and what the children's view would be if presented with this alternative. Subsequent investigation has revealed that the teacher and his wife would be favorably considered as adoptive parents and the children would like to be placed in their home.

. . .

The court finds, from clear, cogent and convincing evidence, that respondent is either unwilling or unable to fulfill the role of parent to these three children, that they are dependent as a result thereof, that their welfare requires that some person(s) act in the role of parent and that, therefore, their welfare requires that respondent be permanently deprived of all parental rights with respect thereto and that they be placed with the Department of Social and Health Services for adoption.

Because of the desires expressed by the children, the court is reluctant to see them put through the trauma of further placement in homes that would be strange to them, and for this reason, *will withhold the entry of an order of deprivation, pending approval of the adoption of the children by Mr. and Mrs. Whisnant. If that plan does not materialize, that court will be willing to reconsider its order of permanent deprivation, not because it views respondent as deserving of another chance, but only that the alternative of foster care pending an attempt at rehabilitation by respondent might be a less harmful alternative to the children than the plan originally advanced by the department.* In this connection, the court would only consider the welfare of the children, it having already determined that by her conduct respondent has forfeited any consideration of her parental rights by the court in making a further disposition of the matter.

(Italics ours.)

It is the mother's contention that her constitutional rights of due process were violated by the trial court conducting part of the trial in secret, by taking of testimony from the children and caseworker wherein the mother had

no opportunity to be confronted with this evidence. Appellant further argues that the consideration of the adoptability of her children is not relevant and should not be considered by the court in a deprivation case.

## DECISION

ISSUE 1: Constitutional Due Process

A careful review of the record, examination of the pleadings and the court's memorandum opinion convinces us that the mother's constitutional rights of due process, as guaranteed under the fourteenth amendment to the United States Constitution, and article 1, section 3 of the Washington Constitution, have been violated.

In *In re Luscier,* 84 Wn.2d 135, 524 P.2d 906 (1974), our Supreme Court held that a parent had a constitutional right to counsel in any proceeding wherein he may permanently lose his parental rights, and in the event that such parent was an indigent, he would be entitled to appointment of counsel at public expense. In *In re Luscier, supra,* Justice Robert Finley, speaking for the court, comprehensibly outlined the constitutional rights of the parent in a deprivation case. The court stated at pages 136–38:

The family entity is the core element upon which modern civilization is founded. Traditionally, the integrity of the family unit has been zealously guarded by the courts. *See, e.g., Ginsberg v. New York,* 390 U.S. 629, 639, 20 L. Ed. 2d 195, 88 S. Ct. 1274 (1968); *May v. Anderson,* 345 U.S. 528, 533, 97 L. Ed. 1221, 73 S. Ct. 840 (1953). The safeguarding of familial bonds is an innate concomitant of the protected status accorded the family as a societal institution. The fundamental nature of parental rights as a "liberty" protected by the due process clause of the Fourteenth Amendment was given expression in *Meyer v. Nebraska,* 262 U.S. 390, 399, 67 L. Ed. 1042, 43 S. Ct. 625, 29 A.L.R. 1446 (1923), wherein the court stated: . . .

The courts of Washington have been no less zealous in their protection of familial relationships. Long ago, this court in *In re Hudson,* 13 Wn.2d 673, 678, 685, 126 P.2d 765 (1942), stated that a parent's interest in the custody

and control of minor children was a "sacred" right and recognized at common law. The Court of Appeals has characterized the right of a parent to their child as "more precious to many people than the right of life itself." *In re Gibson,* 4 Wn. App. 372, 379, 483 P.2d 131 (1971). Child deprivation hearings, in particular, have been the subject of close scrutiny and this court, on many occasions, has carefully scrutinized deprivation hearings to assure that the interested parties have been accorded the procedural fairness required by due process of law. *See, e.g., In re Sego,* 82 Wn.2d 736, 513 P.2d 831 (1973); *In re Lybbert,* 75 Wn.2d 671, 453 P.2d 650 (1969); *In re Ross,* 45 Wn.2d 654, 277 P.2d 335 (1954); *In re Petrie,* 40 Wn.2d 809, 246 P.2d 465 (1952); *In re Martin,* 3 Wn. App 405, 476 P.2d 134 (1970). There can be no doubt that the full panoply of due process safeguards applies to deprivation hearings.

. . .

In our opinion, the parent's right to counsel in this matter is mandated by the constitutional guaranties of due process under the fourteenth amendment to the United States Constitution and article 1, section 3 of the Washington Constitution.

If the constitutional right of a parent to have counsel is mandated under our constitution, how much more important in such proceedings would be the mandating of a requirement that all evidence which the court uses in reaching a decision on deprivation of a parent should be in open court subject to cross–examination and to refutation by other evidence. What benefit would there be to appoint an attorney as a guaranteed constitutional right if it is permissible to hold proceedings in secret outside the presence of the parties and their attorneys?

In *In re Adoption of Coggins,* 13 Wn. App. 736, 537 P.2d 287 (1975), a putative father sought review of an order decreeing that his consent to the adoption of his alleged minor child was unnecessary. The petitioning putative father at the time was incarcerated in the state penitentiary. However, he was represented at the hearing by counsel who waived the necessity for a court reporter to

transcribe the hearing, therefore making it impossible to review any alleged errors in the proceeding.

Our court in reversing the matter and holding that an attorney for an absent putative father had no right to waive substantial rights such as the right to record testimony, stated at pages 739–40:

Petitioner's counsel, not counsel here, chose to waive the presence of the court reporter, but, in the absence of the client's physical presence, or evidence of his express consent, we find that waiver is not binding upon the petitioner. An attorney is impliedly authorized to stipulate to, and waive, procedural matters in order to facilitate a hearing or trial; but, in his capacity as an attorney, he is without authority to waive any substantial right of his client unless specifically authorized to do so. *Grossman v. Will*, 10 Wn. App. 141, 516 P.2d 1063 (1973); *In re Houts*, 7 Wn. App. 476, 499 P.2d 1276 (1972).

When presented with a similar issue, the Supreme Court of Colorado in *Clerkin v. Geisendorfer*, 137 Colo. 139, 142, 323 P.2d 633, 634 (1958), stated:

"In an adoption proceeding not only the custody, support and education of a minor is involved, but one or both the parents may be deprived of their rights as parents. In such cases the state has an obligation to see that the best interests of the child and its welfare are served by the decree of adoption.

Such being the law in this jurisdiction we must hold that the state has a responsibility in cases of this kind. In view of the answer filed by the plaintiff in error denying his abandonment of the minor child, and the findings of the trial court that he 'failed without cause to provide reasonable support for the said minor child, at a time prior to the filing of the petition' and 'that the interest and welfare of the said minor child will best be served by the granting of the petition' *we are of the opinion that a court reporter should have been present to take the testimony.*

. . .

We choose not to go to the extent of requiring the presence of the court reporter; however, if the contesting party is absent, and no express waiver given, some provision must be made by the trial court for the retention of verbatim testimony in these cases so it shall be available

in the event of an appeal. Because of the impact of *In re Luscier, supra,* and *In re Sego,* 82 Wn.2d 736, 513 P.2d 831 (1973), *an agreed statement of facts, pursuant to CAROA 34(5), would not be sufficient here when the hearing takes place in the absence of the contesting party and without a waiver.*

(Italics ours.)

In *Esmieu v. Schrag,* 15 Wn. App. 260, 265, 548 P.2d 581 (1976), this court held that a trial court's ex parte consideration of one party's evidence which is presented without notice to the other party denies the other party's right to procedural due process. On page 265 of *Esmieu,* this court set aside an exchange of property between the trust and the trustees held on an ex parte record, and stated as follows:

> Article 1, section 3 of the Washington State Constitution provides that no person shall be deprived of life, liberty, or property without due process of law. The procedural elements of this constitutional guaranty are notice and the opportunity to be heard and defend before a competent tribunal in an orderly proceeding adapted to the nature of the case. A judgment entered in a proceeding which does not comport with procedural due process is void. Because of plaintiff's failure to notify the defendants that testimonial and documentary evidence in support of the proposed exchange would be presented to the court and the court's reliance on such evidence for its order approving the exchange, we must declare the November 18 order void.

(Footnotes omitted.)

The action of the Court of Appeals in setting the judgment in *Esmieu* aside was affirmed by our state Supreme Court in *Esmieu v. Schrag,* 88 Wn.2d 490, 563 P.2d 203 (1977).

█ Based on the rationale expressed in the above cases, it is our opinion that the parent's right to have all proceedings in this matter conducted in open court is mandated by the constitutional guaranties of due process under the fourteenth amendment to the United States Constitution, and article 1, section 3 of the Washington Constitution. In addition, all such proceedings should be conducted in the

presence of a court reporter, or in the absence of a court reporter by an electronic recording device in operable condition, wherein a permanent record of the proceedings can be made available.

ISSUE 2: Consideration of Adoptability in Deprivation Case Prohibited

■ Consideration of adoptability of deprived children should not be considered by a trial judge in a deprivation hearing.

In *In re Hendrickson,* 7 Wn. App. 485, 499 P.2d 908 (1972), this court held that the mere fact that a child's home life might be improved through adoption is not grounds for deprivation. In *In re Hendrickson,* the court stated at page 487:

The caseworker, called as a witness by the state, testified that he wants the children to live in an "atmosphere of stimulation, intellectually and emotionally." In its oral decision the trial court decided that the parents should be deprived of the children because "there is no parent who has demonstrated the ability to establish a good solid family home." We wish the best for the children— their welfare is the paramount consideration—but there is no statutory authority for these standards which are too high to be set for parents in a deprivation case. RCW 13.04.010; *see In re Adoption of Lybbert,* 75 Wn.2d 671, 453 P.2d 650 (1969) (abandonment); *In re Dunagan,* 74 Wn.2d 807, 447 P.2d 87 (1968) (beating); *In re Miller,* 40 Wn.2d 319, 242 P.2d 1016 (1952) (brutality of father is grounds for permanent deprivation of father but not of mother); *In re Warren,* 40 Wn.2d 342, 243 P.2d 632 (1952) (poverty is not grounds for deprivation); *State ex rel. Bulmon v. Superior Court,* 21 Wn.2d 536, 151 P.2d 987 (1944) (filth, squalor, malnutrition, nonsupport); *In re Day,* 189 Wash. 368, 65 P.2d 1049 (1937) (neglect, nonsupport); *In re Fields,* 56 Wash. 259, 105 P. 466 (1909) (abandonment); *Lovell v. House of the Good Shepherd,* 9 Wash. 419, 37 P. 660 (1894) (immoral mother, alcoholic father, indefinite placement of child in institution is not grounds for deprivation).

Reading the trial court's opinion in the subject case, it is clear that the court based part of its decision for deprivation on the adoptability of the children by one of the children's teachers and his wife. This is prejudicial error.

We reverse and vacate the order of deprivation.

JAMES and WILLIAMS, JJ., concur.

Reconsideration denied June 21, 1979.

Review denied by Supreme Court September 21, 1979.