[Nos. 10247-5-III; 10248-3-III.   Division Three.   October 24, 1991.]

*In the Matter of the Welfare of* S.E., ET AL.
E., ET AL, *Appellants*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

---

*Phillip J. Wetzel* and *Perrizo & Wetzel; Michael F. Keyes* and *Keyes & Schrawyer,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Daniel Judge, Assistant,* for respondent.

SHIELDS, C.J. — Appellants are the parents of S.E., born June 23, 1982, and D.E., born November 27, 1980. They seek review of the termination of their parental rights. On appeal, they contend the trial court erred in taking the testimony of D.E. and S.E. with counsel present and on the record in chambers. We affirm.

The substance of the allegations in the dependency petitions filed March 13, 1987, was as follows:

> The child is the victim of continued exposure to inappropriate sexual contact and/or sexual abuse in that the child has witnessed or been involved in sexual contact with adults and other children.

In interviews conducted March 14 and 16, 1987, both children detailed vivid and graphic descriptions of various acts of sexual abuse committed upon them by their parents. They spoke with little or no hesitancy and in a "matter of fact" tone about what it means to "play doctor" with their parents, and said they were "good doctors". They told Department of Social and Health Services (DSHS) caseworker Judith Jenson of examining their parents, their cousin, and each other. D.E. demonstrated, with an anatomically correct doll, "how we work on [S.E.]", how his parents examined him, his mother's examination of his father and D.E.'s own participation in this examination. S.E. described many of the same activities as D.E.[1]

Following a dependency hearing on October 12, 1987, attended by both parents, the court entered orders with the

---

[1] The children's statements from these interviews of March 14 and 16, 1987, were admitted into evidence at the termination hearing by the court under RCW 9A.44.120. The admission of these statements is not cited as error in this appeal.

approval of all parties finding each child dependent. Those orders entered January 20, 1988, and agreed final dispositional orders entered June 9, 1988, provided for continuation of individual therapy for the children, begun in March 1987 through James P. Mahoney, a child and family therapist specializing in abused children, and individual therapy for the parents through John W. Colson, a specialist in evaluation and treatment of sexual offenders.

The children have continued in individual therapy with Mr. Mahoney. Ms. E. received individual and marital counseling, women's group counseling, postincest group counseling (to deal with her own abuse as a child), and some group counseling with Mr. E. Mr. E. participated in marital and group counseling with Ms. E. and other related therapy designed to treat his minimization and denial of the acts involving his children.

Mr. Colson recommended the initiation of family therapy; Mr. Mahoney recommended that family therapy not occur. The October 20, 1988, and March 2, 1989, dependency review hearing orders rejected Mr. Colson's proposed family therapy and continued the provisions of the earlier dispositional orders.

DSHS filed petitions for termination of parental rights to D.E. and S.E. on December 15, 1988, in Pend Oreille County. On December 19, 1988, at a review hearing, which was attended by both parents, the court appointed Dr. Mark Mays to conduct psychological evaluations of the parties to determine whether family therapy and visitation should be provided. In appointing Dr. Mays, the court specifically ordered "Family therapy and visitation between the parents and the above-named child shall not occur until further order of this court."[2] Dr. Mays was of the opinion both parents had a very poor prognosis for recovery and family therapy should not take place because it would prove emotionally detrimental for the children and would not aid family reunification given the psychological profiles of the parents.

---

[2]The order resulting from this hearing was not entered until March 2, 1989.

The termination hearing, originally set for May 2, 1989, was continued at the parents' request to allow time to review the evaluation report of Dr. Mays. The termination hearing began on June 26, 1989, and continued through July 5. Twenty-six witnesses testified.

Findings of fact, conclusions of law and orders terminating parental rights were entered September 13, 1989. Mr. and Ms. E., through separate counsel, have appealed.

The parents contend the trial court erroneously admitted the testimony of the children outside their presence, citing *In re McGee*, 36 Wn. App. 660, 679 P.2d 933, *review denied*, 101 Wn.2d 1018 (1984); *In re Moseley*, 34 Wn. App. 179, 660 P.2d 315, *review denied*, 99 Wn.2d 1018 (1983); *In re Akers*, 22 Wn. App. 749, 592 P.2d 647, *review denied*, 92 Wn.2d 1028 (1979), *overruled on other grounds in In re Hall*, 99 Wn.2d 842, 851, 664 P.2d 1245 (1983); and *In re Houts*, 7 Wn. App. 476, 499 P.2d 1276 (1972).

Ms. E. cites the following language from *Houts*, at 480-81:

> A parent is entitled to notice and opportunity to be heard before a court may enter an order permanently depriving him of custody of his child. The right is protected by the due process clauses of the state and federal constitutions. *The right to a hearing ordinarily includes the right to be present.*

(Citations omitted. Italics ours.) *Houts* is distinguishable because it involved a termination proceeding which excluded both parents from the entire hearing. *McGee* and *Akers* are also distinguishable. In neither case did the court take the child's testimony; it interviewed the child in chambers, without a record, outside the presence of the parties *and* counsel.

■ The first issue with respect to the procedure followed by the trial court is whether parents have a constitutional right to be personally present during a termination proceeding involving sexual abuse by both parents when the testimony of the children involved is taken in chambers, on the record, and in the presence of all counsel. RCW 13.34.090, in relevant part, states:

**Inherent rights under chapter proceedings.** (1) Any party has a right to be represented by an attorney in all proceedings under this chapter, to introduce evidence, to be heard in his or her own behalf, to examine witnesses, to receive a decision based solely on the evidence adduced at the hearing, and to an unbiased fact-finder.

The statute itself does not specifically give the parents the right to be present.

The confrontation clause of the sixth amendment to the United States Constitution applies to criminal prosecutions. A termination proceeding is a civil proceeding. Sixth Amendment rights do not extend to parents in a child termination proceeding. *In re Luscier*, 84 Wn.2d 135, 139, 524 P.2d 906 (1974). Nor does the confrontation clause of Const. art. 1, § 22 (amend. 10) apply to deprivation proceedings. *In re Penelope B.*, 104 Wn.2d 643, 709 P.2d 1185 (1985).

The second issue with respect to the procedure followed by the trial court involves the right to due process in a termination proceeding. The nature of due process protections to which a parent in a parental rights termination proceeding is entitled depends upon a balance of: (1) the private interest affected by the proceeding, (2) the risk of error created by the procedure used by the State, and (3) the governmental interest which supports the use of the challenged procedure. *See Krause v. Catholic Comm'ty Servs.*, 47 Wn. App. 734, 737-45, 737 P.2d 280, *review denied*, 108 Wn.2d 1035 (1987). This test cited in *Krause* echoes the decisions in *Santosky v. Kramer*, 455 U.S. 745, 754, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982); *Lassiter v. Department of Social Servs.*, 452 U.S. 18, 27-31, 68 L. Ed. 2d 640, 101 S. Ct. 2153, *reh'g denied*, 453 U.S. 927 (1981); and *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976).

In reviewing this balance of factors as they apply here, the following analysis can be made:

1. The private interest affected by the termination proceeding is great. "[C]ourts undertake a grave responsibility when they deprive parents of the care, custody and

control of their natural children." *In re Sego*, 82 Wn.2d 736, 738, 513 P.2d 831 (1973). A parent's right to control and have custody of children is a fundamental civil right which may not be interfered with without the complete protection of due process safeguards, particularly notice and an opportunity to be heard. *Halsted v. Sallee*, 31 Wn. App. 193, 639 P.2d 877 (1982).

The due process protections afforded parents in a termination hearing include a strict burden of proof, *In re Sego, supra* at 739; the right to notice and an opportunity to be heard and defend, *In re Martin*, 3 Wn. App. 405, 476 P.2d 134 (1970); and the right to assistance of counsel and appointment of counsel for indigent parents, *Martin*; RCW 13.34.090. Here, the procedure followed by the trial court included all of these protections. These protections are summarized in *In re Darrow*, 32 Wn. App. 803, 806, 649 P.2d 858, *review denied*, 98 Wn.2d 1008 (1982).

■ 2. The risk of error created by the procedure used by the State in *Akers* was not present here. A record of the proceeding was made and counsel and the guardian ad litem were present, had an opportunity to cross-examine the children, did so, and had an opportunity to rebut the children's testimony by other evidence. The safeguards provided to the parents here were far greater than those provided to the parents in either *Akers* or *McGee*.

■ 3. The governmental interest which supports the procedure used must be analyzed. The State has an interest in protecting the best interests of the child. *In re Sumey*, 94 Wn.2d 757, 763, 621 P.2d 108 (1980). "[A] child's welfare is the court's primary consideration. Consequently, when the rights of parents and the welfare of their children are in conflict, the welfare of the minor children must prevail." *In re Pawling*, 101 Wn.2d 392, 399, 679 P.2d 916 (1984) (quoting *In re Sego, supra* at 738).

Here, the trial court stated:

[U]nder the circumstances with the age of the children being 8 and 6, with the nature of the testimony, I think it would be

much better for the children and from their viewpoint to present their testimony with as little strain and tension on their part as possible that's so often present sitting in the witness chair in the courtroom.

The testimony of the children was confined to two areas. The first dealt with the children's recollection of sexual acts between themselves and their parents, which was corroborated by their statements made to the DSHS caseworker on March 14 and 16, 1987, and their sexualized behavior exhibited to the foster parents, caseworkers and therapist. The second dealt with where the children wanted to live, which was corroborated by their foster mother. Neither parent assigned error to the foster mother's testimony at trial. The governmental interest in protecting the best interests of the child supports the procedure used here by the trial court to allow the testimony of the children in chambers, on the record in the presence of counsel. We conclude the parents' due process rights were protected under the balance of interest requirement of *Krause*.

In summary, the due process protections afforded the parents the right to notice and an opportunity to be heard, and the right to assistance of counsel complied with the requirements set forth in *Darrow*.

We affirm.

Pursuant to RCW 2.06.040, Mr. and Ms. E.'s remaining contentions and the court's opinion as to them are without precedential value and will not be published.

MUNSON and THOMPSON, JJ., concur.

Review denied at 118 Wn.2d 1017 (1992).