IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of<br>E.C., dob 10/25/07,<br><br>Minor child,<br><br>STATE OF WASHINGTON,<br>DEPARTMENT OF SOCIAL<br>AND HEALTH SERVICES,<br><br>Respondent,<br><br>v.<br><br>CHRISTOPHER CARR,<br><br>Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 69458-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br>FILED: August 12, 2013 |

SCHINDLER, J. — Christopher Carr challenges the "Order of Dependency" because he did not receive notice of the dependency fact-finding hearing. In the alternative, he argues the State did not establish the child was dependant under RCW 13.34.030(6)(c). We affirm.

FACTS

E.C. was born October 25, 2007 in Riverside County, California. Michele Moses is E.C.'s mother. Moses was E.C.'s primary caretaker. Christopher Carr was not listed on the birth certificate but is the alleged father of E.C. By the time E.C. was four-years-

old, he was diagnosed with autism. E.C. does not communicate well and speaks very little. In 2011, E.C. and his mother moved to Whatcom County.

In early 2012, an apartment manager contacted the police about drug dealing in the apartment where Moses and E.C. lived. In April, the police went to the apartment to check on the welfare of E.C. and found drug paraphernalia. Moses told the police she had relapsed and admitted using methamphetamine.

On May 2, Child Protective Services received an emergency referral from St. Joseph Medical Center. A baby-sitter had taken E.C. to the emergency room. E.C. was limp. The baby-sitter said that E.C. had been vomiting and shaking. E.C. was initially diagnosed with a sepsis infection. Moses arrived at the hospital several hours later. Moses told the doctor that she was moving and wanted to leave E.C. at the hospital. The doctor told Moses she had to stay with the child. The next day, E.C.'s diagnosis was changed from a sepsis infection to "severe hydration."

While E.C. was in the hospital, Moses spent long periods away from her child and missed several scheduled meetings with the social workers. After Moses failed to attend the meeting on May 3, the police placed E.C. into protective custody, and the hospital released E.C. to foster care.

On May 4, the State filed a "Dependency Petition" on behalf of E.C. The Dependency Petition alleged that E.C. is abused or neglected and has no parent capable of caring for the child. As to Carr, the petition alleged, in pertinent part:

> Christopher Carr is the alleged father of [E.C.] Christopher is reported to not be listed on the birth certificate, reported to be possibly living in California, and reported to have severe mental health concerns. Ms. Moses explained when she gave birth to [E.C.], she was listed in the hospital as "Jane Doe" as a protection due to severe domestic violence. Mr. Carr's exact whereabouts are unknown and there is no current contact

information. The Department [of Social and Health Services (DSHS)] will continue searching for Mr. Carr.

The notice scheduled a shelter care hearing for May 8 and a fact-finding hearing for June 4. Carr received the summons for the dependency proceedings, the Dependency Petition, and the notice scheduling the shelter care and fact-finding hearings.

Carr appeared at the shelter care hearing on May 8 and participated by telephone. At Carr's request, the court appointed him an attorney and continued the shelter care hearing to May 15. At the shelter care hearing on May 15, Carr's attorney was present and Carr participated by telephone. The court denied Carr's request for placement of E.C. with him.

Carr and his attorney were present at the fact-finding status conference hearing on June 4. Carr participated by telephone. The court ordered the parents to file an answer to the Dependency Petition by July 6 and submit witness lists by August 10. The court scheduled a status conference for 2:30 p.m. on August 16, and scheduled a contested fact-finding hearing for August 27. Carr's attorney was present at the status conference hearing on August 16. Carr was not present. At the request of the mother, the court appointed a new attorney to represent her and continued the fact-finding hearing to September 20 at 2:30 p.m.[1] The court also entered an order granting Carr's motion to testify by telephone at the fact-finding hearing. "Compelling circumstances and father's due process rights are sufficient to allow . . . father to testify telephonically."

---

[1] The order states the new attorney "needs time to prepare." The order also states that the "date may be moved if the social worker is still unavailable."

3

Neither Moses nor Carr attended the fact-finding hearing on September 20. The court-appointed special advocate told the court that she had "no contact with the father." DSHS asked the court to proceed and allow the social worker to testify.

> Ms. Moses is not present; Mr. Carr, I think [Carr's counsel] is trying to reach him yet again, but he is not present and so [DSHS] is asking that the court enter a judgment on the pleadings; that any pleadings or responses or answers filed by the parents be stricken; and that we would like to just take the expert testimony of [the social worker] to confirm and finalize a finding of dependency.

The attorney representing the mother told the court that Moses had received notice to appear at the fact-finding, but despite "multiple" efforts, the attorney had not been successful in contacting the mother. The attorney representing the father stated that he had "instructed [Carr] via message, text and phone to call into court," and did not know why Carr was not present by phone.

The court proceeded with the hearing. DSHS social work supervisor Annie Taylor testified about the services provided to Carr.

> [DSHS] asked that [Carr] complete a substance abuse evaluation and follow through with recommendations; that he complete some assessment around alleged domestic violence perpetrator behavior which the mother has alleged against him; and that he engage in mental health assessment and treatment series consistent with his self-report that he suffers from mental health symptoms that are at times debilitating.

Taylor also testified that Carr had not yet established paternity but had recently completed an inpatient chemical dependency program. Taylor said that Carr was currently living in "a shared clean and sober housing environment that is not appropriate for the child." Taylor testified that the father had not spent any time with E.C.

> The recommendation for visitation with the mother has been weekly for two hours. The father, because of his distance from the child, has not been visiting at this time, but if he were to make himself available our recommendation would be similar, supervised weekly.

4

The court entered an Order of Dependency. The court found that Carr was not "capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development."

## ANALYSIS

For the first time on appeal, Carr contends he did not receive notice of the fact-finding hearing on September 20.

The due process clause of the Fourteenth Amendment protects parental rights to the custody, care, and companionship of their children. In re Welfare of Key, 119 Wn.2d 600, 609, 836 P.2d 200 (1992).

> A parent's right to control and have custody of children is a fundamental civil right which may not be interfered with without the complete protection of due process safeguards, particularly notice and an opportunity to be heard.

In re Welfare of S.E., 63 Wn. App. 244, 250, 820 P.2d 47 (1991).

To ensure proper notice and a meaningful opportunity to be heard, Washington law requires service of the summons and Dependency Petition. RCW 13.34.070(1), (2). "Upon the filing of the petition, the clerk of the court shall issue a summons . . . to the parents . . . requiring them to appear personally before the court at the time fixed to hear the petition." RCW 13.34.070(1). Proper service is a necessary prerequisite for jurisdiction over the parties. In re Dependency of A.G., 93 Wn. App. 268, 276, 968 P.2d 424 (1998).

Juvenile Court Rule 1.4(a) states that the Civil Rules "shall apply in proceedings other than those involving a juvenile offense when not inconsistent with these rules and

applicable statutes." CR 5(b)(1) states that service of pleadings and other papers subsequent to the party's summons and complaint shall be on the party's attorney. "The attorney's knowledge is deemed to be the client's knowledge, when the attorney acts on his behalf." Haller v. Wallis, 89 Wn.2d 539, 547, 573 P.2d 1302 (1978).

The record establishes that Carr had notice of the status hearing on August 16 and that his attorney was present. At the hearing, the court continued the fact-finding to September 20 and granted Carr's motion to present testimony at the fact-finding by telephone. Carr's attorney signed the order and acknowledged receipt of the order continuing the fact-finding hearing to September 20. On September 4, DSHS served Carr's attorney with a CR 43 notice requiring Carr to attend the fact-finding to testify. The record also shows that Carr's attorney "instructed [Carr] via message, text and phone to call into court" to testify at the fact-finding hearing on September 20. Because the record establishes Carr had notice and the opportunity to be heard at the fact-finding hearing, his due process rights were not violated.

In the alternative, Carr claims insufficient evidence supports finding E.C. dependent.

Parents have a fundamental liberty interest in the care and welfare of their children, and State interference is never to be taken lightly. In re Dependency of Schermer, 161 Wn.2d 927, 941, 169 P.3d 452 (2007) (citing In re Welfare of Sumey, 94 Wn.2d 757, 762, 621 P.2d 108 (1980)). But the State has an interest in protecting the physical, mental, and emotional health of children. Schermer, 161 Wn.2d at 941. A dependency is a preliminary proceeding that does not permanently deprive a parent of rights. In re Dependency of T.L.G., 126 Wn. App. 181, 203, 108 P.3d 156 (2005); Key,

119 Wn.2d at 609. Dependency proceedings are designed to protect children from abuse and neglect, help parents alleviate problems that led to State intervention, and reunite families if appropriate. In re Interest of J.F., 109 Wn. App. 718, 728, 37 P.3d 1227 (2001); In re A.W., 53 Wn. App. 22, 27, 765 P.2d 307 (1988).

To find a child dependent, the State must prove by a preponderance of the evidence that the child meets one of the statutory definitions of dependency. RCW 13.34.110(1); Key, 119 Wn.2d at 612. In this case, the trial court found E.C. dependent under RCW 13.34.030(6)(c). RCW 13.34.030(6)(c) provides that a child is dependent where the child "[h]as no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development."

In evaluating a claim of insufficiency of the evidence in a dependency proceeding, we determine whether substantial evidence supports the findings of fact and whether those findings support the court's conclusions of law. In re Dependency of C.M., 118 Wn. App. 643, 649, 78 P.3d 191 (2003). Evidence is substantial if, when viewed in the light most favorable to the prevailing party, a rational trier of fact could find the fact by a preponderance of the evidence. In re Dependency of E.L.F., 117 Wn. App. 241, 245, 70 P.3d 163 (2003).

The legislature has determined that in balancing the legal rights of parents against the rights of the child, the rights and safety of the child shall be the paramount concern. RCW 13.34.020; Schermer, 161 Wn.2d at 942. There are no specific factors a court must consider when determining whether a parent is capable of parenting under RCW 13.34.030(6)(c); rather, the inquiry is highly fact specific. Schermer, 161 Wn.2d at

7

951-52. Additionally, the State need not prove that a parent is unfit to prove a dependency.

> A dependency based on RCW 13.34.030[(6)](c) does not turn on parental "unfitness" in the usual sense. Rather, it allows consideration of both a child's special needs and any limitations or other circumstances which affect a parent's ability to respond to those needs. Under RCW 13.34.030[(6)](c), it is unnecessary to find parental misconduct in order to find a child dependent.

Schermer, 161 Wn.2d at 944.

The undisputed testimony established that Carr was living in post-treatment housing that was not appropriate for the care of a child. The court found that Carr suffered from mental illness that was occasionally debilitating, and there was no evidence that he could care for the special needs of E.C. The uncontroverted evidence supports the finding that Carr was not capable of adequately caring for E.C., such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development. We affirm.

WE CONCUR:

Cox, J.

8