**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Dependency of<br><br>G.C.B. and M.J.B.-L.,<br><br>Minor children. | No. 84772-4-I<br>(consolidated with No. 84773-2-I)<br><br><br>PUBLISHED OPINION |

BOWMAN, J. — R.B. appeals an order terminating his parental rights to G.C.B. and M.J.B.-L. He argues that the trial court erred by allowing him to proceed pro se in the termination proceedings because he did not knowingly and unequivocally waive his right to counsel. He also argues insufficient evidence supports the trial court's findings that the Department of Children, Youth, and Families (Department) made efforts to support a guardianship. Because the record shows that R.B. clearly and voluntarily relinquished his statutory right to an attorney and that substantial evidence supports the trial court's findings, we affirm.

FACTS[1]

R.B. is the father of G.C.B. and M.J.B.-L. G.C.B. was born in December 2011 and M.J.B.-L. was born in August 2009. The children's mother, M.L., relinquished her parental rights to both children by agreement in 2017.

---

[1] The facts are also set forth in In re Dependency of G.C.B., No. 77943-5-I (Wash. Ct. App. Mar. 4, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/779435.pdf. We repeat them only as necessary.

No. 84772-4-I (consol. with No. 84773-2-I)/2

On June 23, 2015, Burlington police responded to a call about a small child walking down a busy street alone. The police identified the child as three-year-old G.C.B., whom they recognized from an incident about two weeks earlier when they found him "wandering" alone in a motel parking lot. The police took protective custody of G.C.B., his older half-brother S.L.,[2] and his sister M.J.B.-L. In the following days, the Department took all three children to the hospital to be examined. The examinations showed that the children suffered medical and dental neglect and were significantly malnourished. There were also concerns that the children had been exposed to a serious infectious disease.

On June 25, 2015, the Department filed dependency petitions for G.C.B. and M.J.B.-L. in Skagit County Superior Court. In September, the court found the children dependent. The court ordered several services for R.B., including a psychological evaluation with a parenting component, age-appropriate parenting instruction, and nutritional education. It also ordered R.B. to participate in all medical and dental appointments for the children and submit to tuberculosis testing. Finally, the court granted R.B. visitation twice a month for two hours so long as he tested negative for tuberculosis.

In August 2016, the Department petitioned to terminate R.B.'s parental rights. The Department alleged that R.B. did not participate in the court-ordered services and could not provide a stable home for the children.

Psychologist Dr. Evan Freedman evaluated R.B. in February 2017 and diagnosed him with schizoid personality traits, presenting paranoid and

---

[2] S.L. is not a part of this appeal.

2

narcissistic characteristics. He observed that R.B. has a "pattern of detachment in personal relationships" and "indifference to criticism," causing "significant difficulty in facilitating attachment with his children."

A termination trial began in December 2017.[3] Dr. Freedman testified about R.B.'s difficulty in forming relationships. He said that the children did not seem happy to see their father and that R.B. seemed " 'quite distant' " from them.[4] The Department also showed that R.B. stopped visiting the children in April 2017 and had not seen either child since.

After the trial, the court entered an order terminating R.B.'s parental rights to G.C.B. and M.J.B.-L. R.B. appealed, and we reversed and remanded for further proceedings.[5]

In April 2021, the Department filed new termination petitions. At a preliminary hearing on June 15, R.B. requested to represent himself. A superior court commissioner engaged R.B. in a colloquy, inquiring into his education level, legal knowledge, and experience with parental termination proceedings. The

---

[3] Two months before trial, the Department initiated dependency proceedings for R.B.'s youngest son, A.B. The Department ultimately petitioned to terminate R.B.'s parental rights to A.B. While the Department monitored all three children, A.B.'s case remained on a "different track," and he is not a part of this appeal.

[4] G.C.B., slip op. at 5.

[5] G.C.B., slip op. at 11-12. R.B. alleged a due process violation because the Department did not notify him during the dependency that it would consider either the lack of an emotional bond with the children or his schizoid personality traits as a basis for terminating his parental rights. Id. at 8. We agreed and remanded for the trial court to consider whether termination was appropriate based on "the parental deficiencies of which the father was properly notified." Id. at 11-12. We did not address whether the Department offered services specifically tailored to address R.B.'s insufficient bonding with the children and his schizoid personality traits or whether R.B. could remedy his parental deficiencies so that the Department could return the children to him in the near future. Id. at 12.

commissioner stressed the technical nature of the rules of evidence and warned R.B. of the risks of proceeding without counsel. Still, R.B. expressed a desire to proceed pro se, and the court granted his request.

On July 15, 2022, the court held a hearing to determine whether to appoint standby counsel for R.B. During the hearing, the superior court judge asked R.B. if he still wanted to proceed pro se, to which R.B. replied, "I would like to have standby counsel, but I would like to proceed pro se." The court appointed a standby attorney.

The court held the second termination trial over four days in September and October 2022. R.B. represented himself with standby counsel. R.B. acknowledged that he had no bond with his children. But he asked the court to leave his parental rights intact. He testified that in his "ideal situation," G.C.B. and M.J.B.-L. would remain with their current caregivers, the caregivers would maintain financial responsibility for the children, and he would "slowly integrate [him]self into the [children's] lives" and establish a relationship with them.[6]

On November 3, 2022, the trial court made its oral ruling terminating R.B.'s parental rights to G.C.B. and M.J.B.-L. The court stated:

> I've been primarily influenced by the amount of time that has occurred in the lives of these children during the period of dependency. The amount of time that's been afforded, the services that have been offered, and the lack of progress towards any sort of visitation or reunification with the children.

The court "specifically considered whether a guardianship or some lessor type of

---

[6] While R.B.'s proposal does not amount to a formal guardianship, the parties treat it as such for the purpose of appeal.

arrangement might be available or appropriate here" but ultimately decided that because the caregivers want to adopt the children, any "alternative" to termination would only be a barrier to permanent placement for them. The court entered findings of fact and conclusions of law in support of its ruling.

R.B. appeals.

## ANALYSIS

R.B. argues that the trial court erred by allowing him to proceed pro se in the termination proceedings because he did not knowingly and unequivocally waive his right to counsel. He also argues insufficient evidence supports the trial court's findings that the Department made efforts to support a guardianship.

## Waiver of Right to Counsel

R.B. argues that the trial court erred by granting his request to proceed pro se because he did not unequivocally and knowingly waive his right to counsel. We disagree.

We review a trial court's decision to grant or deny a motion to proceed pro se for abuse of discretion. State v. Curry, 191 Wn.2d 475, 483, 423 P.3d 179 (2018). A court abuses its discretion if its decision is manifestly unreasonable, reached by applying the wrong legal standard, or rests on facts unsupported by the record. Id. at 483-84. The burden to show an invalid waiver of the right to counsel rests with the person asserting error. State v. Hahn, 106 Wn.2d 885, 901, 726 P.2d 25 (1986).

"Unless waived in court," RCW 13.34.090(2) provides parents a right to counsel at "all stages of a proceeding in which a child is alleged to be

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

dependent," including termination proceedings. In re Welfare of J.M., 130 Wn. App. 912, 921, 125 P.3d 245 (2005). The right derives from the due process guarantees of article I, section 3 of the Washington State Constitution and the Fourteenth Amendment to the United States Constitution. In re Dependency of G.G., 185 Wn. App. 813, 826, 344 P.3d 234 (2015); J.M., 130 Wn. App. at 921. Termination proceedings are civil in nature, so the right to counsel guaranteed by the Sixth Amendment does not apply. In re Welfare of S.E., 63 Wn. App. 244, 249, 820 P.2d 47 (1991); U.S. CONST. amend. VI.

A parent can waive the right to counsel by (1) voluntarily relinquishing the right, (2) waiving it by conduct, or (3) forfeiting it. In re Dependency of V.R.R., 134 Wn. App. 573, 582, 141 P.3d 85 (2006). Waiver must be a knowing and voluntary relinquishment and is typically shown by an affirmative verbal request. Id. The trial court must ensure that a parent waiving their right to counsel is aware of the risks of self-representation. In re Welfare of G.E., 116 Wn. App. 326, 334, 65 P.3d 1219 (2003).

Citing G.E., R.B. argues that a court considering a parent's request to proceed pro se must "use a similar framework to that in the criminal context to assess whether a parent properly waives his right to counsel." R.B. reads the holding in G.E. too broadly.

In G.E., Division Two of this court acknowledged that we "have yet to clearly state whether parents must make a knowing and intelligent waiver of their right to counsel equal to the standards found in criminal law cases." 116 Wn. App. at 333. It then held that "because the statutory right to counsel at issue

6

No. 84772-4-I (consol. with No. 84773-2-I)/7

here requires appointment of counsel absent a waiver in court, the evidence of waiver required to be on the record is similar" to that in a criminal case. Id. at 333-34. So, the waiver must be knowing, voluntary, and affirmatively expressed on the record. Id. But the court did not mandate any particular framework or colloquy in which a court must engage to assess whether a parent affirmatively, knowingly, and voluntarily waives their right to counsel. And we decline to do so here.[7]

Still, even using his proposed criminal proceeding framework, R.B.'s challenge to the validity of his waiver fails. As discussed below, the record shows he unequivocally requested to proceed pro se and knowingly and voluntarily waived his right to counsel.

A. Unequivocal Request

R.B. argues that "[t]he court's colloquy does not establish [he] unequivocally requested to proceed pro se." We disagree.

A defendant must " 'make an explicit choice between exercising the right to counsel and the right to self-representation so that a court may be reasonably certain that the defendant wishes to represent himself.' " State v. Curry, 191 Wn.2d 475, 490, 423 P.3d 179 (2018) (quoting United States v. Arlt, 41 F.3d 516, 519 (9th Cir. 1994)). In assessing whether a request to proceed pro se is

---

[7] Nor does G.E. conclude, as R.B. suggests, that a court must indulge in every reasonable presumption against a parent's waiver of their right to counsel. We do not reach this issue because the parties did not brief it. See RAP 10.3(a)(6). But we note that the presumption arises in the constitutional context of safeguarding a criminal defendant's Sixth Amendment right to counsel. Nonetheless, even if we applied the presumption, the evidence shows R.H. knowingly and voluntarily waived his right to counsel.

unequivocal, we look to factors such as whether the request was formal or spontaneous, whether the defendant truly sought to represent himself or was just expressing frustration, and whether the defendant made the request because of a disagreement with counsel over trial strategy.  Id. at 478-88.  We assess these factors on a case-by-case basis, considering the surrounding facts and circumstances.  Id. at 490.  And "when a defendant makes a clear and knowing request to proceed pro se, such a request is not rendered equivocal by the fact that the defendant is motivated by something other than a singular desire to conduct his or her own defense."  State v. Modica, 136 Wn. App. 434, 442, 149 P.3d 446 (2006), aff'd, 164 Wn.2d 83, 186 P.3d 1062 (2008).

On June 15, 2021, R.B. appeared with counsel for a preliminary hearing.  His attorney told the court commissioner that R.B. "is here and prepared to ask to represent himself" on the termination matters.  The commissioner then engaged R.B. in an extensive discussion about the risks and procedures involved in proceeding pro se.  The court asked R.B. "how far [he] went in school" and if he had "any training in the law."  It warned R.B. that he would not "have the benefit of an attorney's knowledge of law in the area of dependencies or termination," that there are rules of evidence he must follow, and that he may have to engage in "awkward" testimony where "you have to pose questions to yourself and then answer the questions."  The commissioner also reiterated the seriousness of the potential outcome.

At the end of this colloquy, R.B. said, "I understand."  The commissioner then asked R.B. if it was still his "desire to represent [him]self knowing how

difficult it may be." R.B. said, "I'm not concerned about the difficulty. I'm just . . . concerned about the truth being heard." The commissioner then asked R.B. if anybody "forced [him] to make this decision to represent [him]self," to which R.B. answered, "No, sir."

The record shows that R.B. clearly expressed his desire to represent himself because he believed it was a more effective way for "the truth to be heard."

Still, R.B. argues his waiver was equivocal because after the court described the procedural difficulties he may face testifying as a pro se litigant, R.B. stated, "[I]f I'm not going to be given an opportunity [to testify], then I should probably have legal counsel." But after R.B.'s comment, the court told him, "I'm not saying that you wouldn't be able to give testimony. I'm just telling you that there may be requirements for the way your testimony is presented that might make it difficult for you to get your evidence in to the court." After the court's explanation, R.B. clearly acknowledged that he would still like to represent himself.

Further, more than a year later, R.B. again acknowledged that he would like to proceed pro se. On July 15, 2022, R.B. appeared before a superior court judge to address appointment of standby counsel. The court confirmed that R.B. had waived his right to counsel after a discussion with the commissioner a year earlier. It then asked R.B., "Is that still your decision? Is there any — do you have any different decision today as we get on the eve of your trials?" R.B. replied, "I would like to have standby counsel, but I would like to proceed pro se

with [standby] counsel." R.B. again explained that he wanted to represent himself because "[i]t feels like the system is designed in such a way that my voice is and my true stance is unable to be heard due to the design of the system. So I believe that the best way for that to be heard is to go pro se." The court then appointed standby counsel.

Finally, in closing argument, R.B. again acknowledged he made an explicit choice to proceed pro se. He told the court that it "was not some sort of half-hatched idea for me to represent myself. I'm sure I didn't perform the best, you know, there is a lot about the legal system I don't know, but I decided to do it because I felt that it was best for my children."

The trial court did not err by concluding that R.B. unequivocally requested to proceed pro se.

B.  Knowing and Intelligent Waiver

R.B. argues that he did not knowingly and intelligently waive his right to counsel because the trial court did not explain to him the nature of a termination proceeding and the potential consequences. Again, we disagree.

A defendant must understand the dangers and disadvantages of self-representation to make a knowing and intelligent waiver of the right to counsel. Faretta v. California, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). While there are no strict rules governing the method for determining whether a defendant understands the risks of proceeding pro se, the preferred procedure is a colloquy on the record. Modica, 136 Wn. App. at 441. In criminal cases, this colloquy should inform the defendant of the nature of the charges, the maximum

10

penalty faced, and the technical and procedural rules that will govern the presentation of a defense. Id.

In assessing a defendant's understanding of the seriousness of the charges, "[t]he knowledge required to waive counsel may be gained from participation in an earlier trial on the same matter." State v. Conlin, 49 Wn. App. 593, 595-96, 744 P.2d 1094 (1987). This is because a defendant who was present during a previous trial for the same charge

> was afforded an . . . opportunity to learn about trial practice as specifically applied to his case during the first trial. . . . [H]e witnessed firsthand a full, totally realistic demonstration and application of what to expect, what the problems of presenting his defense were and precisely how to do it.

State v. Strodtbeck, 46 Wn. App. 26, 29, 728 P.2d 622 (1986).

As discussed above, a court commissioner conducted a detailed colloquy with R.B. on the risks and requirements of self-representation. The commissioner informed R.B. that he would be "risking an outcome you don't want" if he chose to proceed without the benefit of an attorney's knowledge of law in the area of dependencies and terminations. The commissioner advised R.B. of the procedural and technical difficulties governing the presentation of his defense, warning R.B. that "at a trial where you'd be representing yourself, you would have to present evidence to the court, and there's some rules of evidence that apply." The court cautioned that "lawyers who have been doing this for some time are familiar with the rules of evidence and know the trial procedures, and I expect would do a better job representing your interests than you would on your own." The commissioner also warned R.B. that representing himself was ill-

11

No. 84772-4-I (consol. with No. 84773-2-I)/12

advised, stating, "The court will allow [R.B.] to represent himself, even though I think that's an unwise decision under the circumstances."

R.B. argues that the colloquy with the commissioner was insufficient because the court did not inform him of the specific allegations in the termination petition or the consequences should the Department prevail at trial. But R.B. was present throughout his termination trial in 2017. Indeed, the trial court terminated his parental rights to G.C.B. and M.J.B.-L. at the end of that trial, so R.B. was aware of the nature of the allegations against him and experienced the consequences of an adverse outcome. And R.B. acknowledged as much during his colloquy with the superior court commissioner in June 2021. When the commissioner asked if he was familiar with "trial procedure," R.B. replied, "Yes. I've been to a termination trial before."[8]

The record shows that R.B. made a knowing and intelligent waiver of his right to counsel.

Substantial Evidence

R.B. argues that substantial evidence does not support the trial court's finding that the Department "made efforts to support the permanent option of guardianship" and that the children's current caregiver "is not interested in being a guardian." Specifically, R.B. argues that recent amendments to RCW 13.34.180(1)(f) impose an affirmative duty on the Department to make efforts to

---

[8] We note that since September 2017, R.B. was simultaneously involved in dependency and termination proceedings involving his youngest son, A.B. Counsel represented him in those proceedings.

12

No. 84772-4-I (consol. with No. 84773-2-I)/13

support his proposed guardianship, which the Department did not do. We disagree.

Our review of a trial court's decision to terminate parental rights is limited to assessing whether substantial evidence supports the court's findings. In re Parental Rights to D.H., 195 Wn.2d 710, 718, 464 P.3d 215 (2020). "Substantial evidence" is "evidence in sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." In re Welfare of T.B., 150 Wn. App. 599, 607, 209 P.3d 497 (2009). Because of the fact-specific nature of termination proceedings, deference to the trial court is particularly important. In re Parental Rights to K.M.M., 186 Wn.2d 466, 477, 379 P.3d 75 (2016) (we defer to the trial court's determinations of witness credibility and the persuasiveness of the evidence).

We review issues of statutory interpretation de novo. K.M.M., 187 Wn. App. at 572. Our goal is to give effect to the legislature's intent. Id. We first look to the plain meaning of a statute as an expression of intent. Id. If the language is plain and unambiguous, our inquiry ends. Id.

Chapter 13.34 RCW creates a two-step framework for terminating parental rights. First, the Department must show that it satisfied its statutory obligations under the six elements of RCW 13.34.180(1) by clear, cogent, and convincing evidence, and then it must establish that termination of parental rights would be in the child's best interest by a preponderance of the evidence. RCW 13.34.190; In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010). Under RCW 13.34.180(1)(f), the Department must show that "continuation of the parent and

13

child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home."[9]

The Department can prove RCW 13.34.180(1)(f) two ways.  In re Welfare of R.H., 176 Wn. App. 419, 428, 309 P.3d 620 (2013).  First, the Department can show that prospects for a permanent home exist but that continuing the parent-child relationship prevents the child from obtaining that placement.  Id.  Or the Department can show that the parent-child relationship has a damaging and destabilizing effect on the child that would negatively impact the child's integration into a permanent home.  Id.  The availability of an identified guardianship placement can be material to determining whether the Department proved either of these means of satisfying the statute.  Id.; see also In re Welfare of N.M., 184 Wn. App. 665, 673, 346 P.3d 762 (2014).

---

[9] The Department must also establish:

(a) That the child has been found to be a dependent child;
(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided; and
(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future.

RCW 13.34.180(1).  R.B. does not challenge the trial court's findings on requirements (a) through (e) of RCW 13.34.180(1).

No. 84772-4-I (consol. with No. 84773-2-I)/15

In R.H., Division Two of our court explained that the availability of a guardianship "is evidence that the trial court should consider when determining whether the [Department] has met its burden to prove RCW 13.34.180(1)(f)." 176 Wn. App. at 428-29. In a similar vein, the legislature amended RCW 13.34.180(1)(f) in 2022, directing the trial court to "consider the efforts taken by the [D]epartment to support a guardianship and whether a guardianship is available as a permanent option for the child" when determining whether the Department met its burden under RCW 13.34.180(1)(f). LAWS OF 2022, ch. 127, § 2.[10]

Here, the trial court considered whether guardianship was a viable option and the Department's efforts to support a guardianship. It then found:

> The [D]epartment has made efforts to support the permanent option of guardianship with the caregivers and to pursue whether guardianship is a good fit for the family and whether it is an option at all. The current placement, with whom the child[ren] [have] been placed for over [three] years, is not interested in being a guardian and would like to adopt. Due to the lack of parent child relationship, adoption is in the best interest of the child[ren].

R.B. argues substantial evidence does not support the trial court's finding because "[n]o evidence existed that the Department made a single effort" to support his proposed guardianship with the current caregivers. R.B. suggests

---

[10] At the same time, the legislature added language to RCW 13.34.145, requiring the trial court to instruct the Department to "discuss guardianship as a permanent option for the child with the child's parents and caregiver as an alternative to termination of parental rights and adoption" when the child has resided out of the home for more than six months. RCW 13.34.145(7)(b) (LAWS OF 2022, ch. 127, § 1). The record does not show whether the trial court issued such an order here, but we note the caregiver testified that the Department discussed with her "the potential for guardianship."

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

that the 2022 amendment creates a new element under RCW 13.34.180(1)(f)—that the Department must make efforts to support a proposed guardianship. He is incorrect.

Our courts have long held that the Department need not disprove the availability of a guardianship placement to satisfy its burden under RCW 13.34.180(1)(f). R.H., 176 Wn. App. at 428. And the 2022 amendment to section (1)(f) does not create such a burden. Indeed, the original proposed amendment to RCW 13.34.180(1)(f) included language requiring the Department to "demonstrate that a guardianship is not sufficient to protect the health, safety, and welfare of the child." H.B. 1747, at 9-10, 67th Leg., Reg. Sess. (Wash. 2022). But the legislature rejected that language in favor of leaving discretion with the trial judge. See RCW 13.34.180(1)(f) ("the court must consider the efforts taken by the [D]epartment to support a guardianship and whether a guardianship is available as a permanent option for the child"). The plain language of the amended section requires the trial court to consider the viability of guardianship as a factor when assessing whether the Department has shown that "continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home."

Whether guardianship is a viable alternative to termination is a case-specific determination, considering factors relevant to the best interests of the

16

child.  In re Dependency of A.C., 123 Wn. App. 244, 254-55, 98 P.3d 89 (2004).[11]

And even when an identified guardianship is available, "there will be circumstances under which termination, rather than guardianship, is the appropriate course of action."  R.H., 176 Wn. App. at 429.

When considering whether guardianship is an appropriate course of action, courts should consider factors such as (1) the qualifications of the proposed guardian, (2) the strength and nature of the parent-child bond, (3) the benefit of continued contact with the parent or extended family, (4) the need for continued state involvement and services, (5) the likelihood the child would be adopted if the court terminated parental rights, and (6) any other case-specific factors relevant to the best interests of the child.  A.C., 123 Wn. App. at 254-55.  The 2022 amendment to RCW 13.34.180(1)(f) does not change this analysis.  Rather, it ensures due consideration of a guardianship by requiring the court to contemplate whether a viable guardianship option exists when assessing whether the Department has met its burden under RCW 13.34.180(1)(f).  And it reinforces the trial court's authority to reject termination of parental rights should

---

[11] R.B. also assigns error to the trial court's finding that "[d]ue to the lack of parent child relationship, adoption is in the best interest of the child[ren]."  According to R.B., the finding is error because the court must first decide whether the Department met its burden to show all six elements under RCW 13.34.180(1) before determining whether termination is in the children's best interests.  See RCW 13.34.190.  But R.B. confuses the court's consideration of whether guardianship is a viable option with the statutory requirement that the Department show by a preponderance of the evidence that termination is in the best interests of the children.  Compare RCW 13.34.190(1)(b), and A.B., 168 Wn.2d at 911, with A.C., 123 Wn. App. at 254-55.  The record shows the trial court properly made its finding that termination is in the best interest of the children after determining that the Department met its burden to satisfy the elements of RCW 13.34.180(1)(f).

it conclude the Department has not adequately explored a viable guardianship option.

Here, a Department caseworker testified that a guardianship was not a viable alternative to termination because the children were thriving in their current placement, and a guardianship would keep them "in limbo" with negative "consequences." The children's guardian ad litem also testified about her opinion on "guardianship versus adoption." She concluded that "adoption would be in their best interest" because of the children's ages and the "lack of stability for seven years." She reiterated that R.B. did not see his children for five of those years, has no relationship or bond with them, and has shown no "ability to parent." And the current caregiver to both children testified that her family "discussed the potential for guardianship or adoption with the Department." She said that her family preferred adoption and that their home had already "been approved for adoption." Substantial evidence supports the trial court's findings that the children's caregivers were "not interested" in being guardians and that a guardianship would diminish the children's integration into a stable and permanent home.

Because the trial court did not err when it allowed R.B. to proceed pro se

and substantial evidence supports the court's findings, we affirm termination of

his parental rights to G.C.B. and M.J.B.-L.

WE CONCUR: