[No. 6579-1-III. Division Three. November 7, 1985.]

*In the Matter of the Marriage of* DAN CHARLES EBBIGHAUSEN, *Appellant, and* DENISE K. EBBIGHAUSEN, *Respondent.*

*Dan Charles Ebbighausen,* pro se, and *Richard A. Perrey* and *Benjamin & Perrey,* for appellant.

*Carl Maxey,* for respondent.

McINTURFF, J.—This case involves the child custody determination in the dissolution of the marriage of Dan C. and Denise K. Ebbighausen. Mrs. Ebbighausen was granted the sole custody of their daughter, but Mr. Ebbighausen contends that in the process, the court violated his due process rights. We agree.

The Ebbighausens were married in Spokane May 16, 1980, and after moving to Grangeville, Idaho, Mrs. Ebbighausen gave birth to their daughter on February 12, 1982. During the next months, since both parents worked at different times, the off–duty parent would baby–sit while the other parent worked. Marital problems developed and in late 1982 and early 1983, Mrs. Ebbighausen came to Spokane to serve on active duty with the Air National Guard. Mrs. Ebbighausen retained custody of the child.

On April 4, 1983, Mr. Ebbighausen filed a petition for dissolution of marriage in which he requested joint custody of the child. Although Mr. Ebbighausen allowed the child to remain with the mother pending the outcome of the dis-

solution, he became concerned she would refuse joint custody after dissolution. Consequently, he kept the child for 11 days after a weekend visitation. During this time Mr. Ebbighausen also fell behind in support payments.

The dissolution proceeding was set for hearing on March 6, 1984. At this time, Mr. Ebbighausen was represented by an attorney. The judge called counsel in chambers, discussed the case and then commenced the hearing. At that time he issued an oral ruling in which he stated:

> I'd like to say preliminarily that I have had a chance to talk with counsel in chambers at some length. I have had the file for awhile and I have had a chance to study it in detail and then they brought some issues to my attention that we dealt with a bit further.
>
> I might congratulate both parties here on their selection of lawyers because they were very insistent and persuasive in their representation of you in chambers. There is sometimes a feeling by the parties to these actions that the judge and the lawyers get together behind closed doors and who knows what goes on in there. Well, I can tell you that nearly always the purpose of that is to get a rather candid statement from each side as to what they see as the issue so that we can narrow in on what needs to be dealt with, rather than going for half a day or a day before we get down to narrowing in on the issues.
>
> . . . What I was able to convince the attorneys was, and they conceded, that if each of you had an opportunity to present your testimony we wouldn't be in any different position, really, than we are right now so why put either of you through that. Instead, we had to look at the—I had to look at the schedules, your work schedules and the child's age and activities that's going to adjust itself through time.

The judge did not take testimony from either party because he determined it would not affect the outcome of the dissolution. He then disposed of all property and debts and awarded custody and control of the daughter to her mother, allowing liberal and reasonable visitation rights to the father.

Mr. Ebbighausen contends his constitutional right of due process was violated when the court resolved the joint cus-

tody issue in chambers and failed to hear testimony concerning the merits of both parents' custody requests. A careful review of the record, examination of the pleadings and the court's oral opinion convinces this court the father's constitutional rights of due process, as guaranteed under the fourteenth amendment to the United States Constitution, and article 1, section 3 of the Washington Constitution, have been violated.

■ Article 1, section 3 of the Washington Constitution provides that no person shall be deprived of life, liberty or property without due process of law. Procedural elements of this constitutional guaranty are notice and the opportunity to be heard and defend before a competent tribunal in an orderly proceeding adapted to the nature of the case. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950); *Wenatchee Reclamation Dist. v. Mustell,* 102 Wn.2d 721, 725, 684 P.2d 1275 (1984). Judgments entered in a proceeding failing to comply with the procedural due process requirements are void. *In re Sumey,* 94 Wn.2d 757, 762, 621 P.2d 108 (1980); *Baxter v. Jones,* 34 Wn. App. 1, 3, 658 P.2d 1274 (1983); *Halsted v. Sallee,* 31 Wn. App. 193, 195, 639 P.2d 877 (1982); *In re Clark,* 26 Wn. App. 832, 837, 611 P.2d 1343 (1980); *Esmieu v. Schrag,* 15 Wn. App. 260, 265, 548 P.2d 581 (1976).

■ It has long been recognized that the family entity is the fundamental element upon which modern civilization is founded. A parent's interest in the custody and control of minor children was a "sacred" right recognized at common law. *In re Hudson,* 13 Wn.2d 673, 678, 685, 126 P.2d 765 (1942). This court has characterized a parent's right to his child as "'more precious to many people than the right of life itself.'" *In re Akers,* 22 Wn. App. 749, 754, 592 P.2d 647 (1979) (quoting *In re Gibson,* 4 Wn. App. 372, 379, 483 P.2d 131 (1971)). Given a parent's significant interest in his children, there can be no doubt the Fourteenth Amendment establishes a parental constitutional right to the care, custody and companionship of the child. *In re Sumey, supra*

at 762; *In re Myricks,* 85 Wn.2d 252, 253–54, 533 P.2d 841 (1975); *see Lehr v. Robertson,* 463 U.S. 248, 77 L. Ed. 2d 614, 103 S. Ct. 2985, 2991 (1983) (parents have due process rights); *Caban v. Mohammed,* 441 U.S. 380, 397, 60 L. Ed. 2d 297, 99 S. Ct. 1760, 1770 (1979); *Smith v. Organization of Foster Families for Equality & Reform,* 431 U.S. 816, 862–63, 53 L. Ed. 2d 14, 97 S. Ct. 2094, 2119 (1977) (opinion concurring in judgment).

█ █ Parental rights have been categorized as a "liberty" protected by the due process clause of the Fourteenth Amendment. *Meyer v. Nebraska,* 262 U.S. 390, 399, 67 L. Ed. 1042, 43 S. Ct. 625, 29 A.L.R. 1446 (1923); *In re Akers, supra* at 753 (quoting *In re Luscier,* 84 Wn.2d 135, 524 P.2d 906 (1974)).

> If the constitutional right of a parent to have counsel is mandated under our constitution, how much more important in such proceedings would be the mandating of a requirement that all evidence which the court uses in reaching a decision . . . should be in open court[.]

*In re Akers, supra* at 754. The court further stated at pages 756–57: "[A]ll such proceedings should be conducted in the presence of a court reporter, or . . . electronic recording device in operable condition, wherein a permanent record of the proceedings can be made available."

The proceedings here were conducted in violation of Mr. Ebbighausen's due process rights. Although Mr. Ebbighausen's attorney "represented" his client in chambers, no client–approved settlement was achieved, nor contemplated by Mr. Ebbighausen. Even if this were a "settlement", an attorney is without authority "'to surrender a substantial right of a client unless special authority from his client has been granted him to do so.'" *Graves v. P.J. Taggares Co.,* 94 Wn.2d 298, 303, 616 P.2d 1223 (1980) (quoting 30 A.L.R.2d 944, 947 § 3 (1953)). This rule assures clients will be consulted on all important decisions if they so choose. Mr. Ebbighausen has a substantial right to have a trial on the merits of joint custody. Any stipulation or agreement by counsel to grant sole custody, without his client's per-

mission, without a hearing, compromised Mr. Ebbighausen's substantial right to present the merits of his request. Thus, Mr. Ebbighausen was not afforded an opportunity to be heard before an impartial tribunal.

The judgment of the Superior Court is reversed; the case is remanded for proceedings consistent with this opinion.

GREEN, C.J., and MUNSON, J., concur.