

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 AUG -5 AM 9: 15

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
### DIVISION ONE

| | | |
|---|---|---|
| UMPQUA BANK, an Oregon bank, | ) | No. 68832-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RYAN SANTWIRE, an individual, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: August 5, 2013 |
| | ) | |

VERELLEN, J. — Ryan Santwire challenges a court order appointing a custodial receiver for property securing a debt. Santwire does not contest default on the underlying debt. He primarily argues that Umpqua Bank lacked standing to initiate the receivership proceedings because he executed the promissory note at issue in favor of Evergreen Bank and Umpqua Bank failed to establish that it is the successor beneficiary. He also contends he was denied the opportunity to present testimony and that a receivership was not reasonably necessary. Finding no error, we affirm.

### FACTS

On July 9, 2009, Ryan Santwire executed a promissory note for a face amount of $1,251,685 in favor of Evergreen Bank. The note had a maturation date of July 6, 2010. The note is secured by deeds of trust on two properties, three of five units in a condominium building (Beach Drive property) and a Seattle house (75th Avenue property). Both deeds of trust provide that the lender has the right to have a receiver

appointed in the event of default. As additional security, Santwire executed assignments of rent for both properties and a commercial pledge agreement of another asset.

On January 10, 2010, the State of Washington closed Evergreen Bank and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver. Immediately upon the closure, the FDIC and Umpqua Bank entered into a purchase and assumption agreement under which Umpqua Bank purchased the failed bank's assets.

Santwire did not make timely payments on the promissory note and failed to pay the balance due when the note matured. Umpqua Bank did not receive any payments under the commercial pledge agreement. The bank sent several notices to the Beach Drive property tenants to enforce the assignment of rent agreements. Santwire instructed the tenants to ignore the notices. Eventually, the tenants of one of the three units began paying rent to the bank. Umpqua Bank sent similar notices to the tenants at the 75th Avenue property, but did not receive any rental payments from those tenants.

In February 2011, Umpqua Bank learned of water intrusion problem at the Beach Drive property. An investigator reported that one of the units had a collapsed ceiling caused by water damage and possible mold. A July 2011 report showed that the problem had not been remediated and identified other maintenance issues. Santwire did not pay 2011 property taxes on the Beach Drive property.[1]

---

[1] The record does not reveal whether there was a tax delinquency on the 75th Avenue property.

Umpqua Bank commenced this action seeking appointment of a receiver.[2] On March 20, 2012, the court entered a show cause order requiring Santwire to appear for a hearing on April 23, 2012.

Three days before the hearing, Santwire filed a response. He argued that Umpqua Bank failed to demonstrate that it is the holder of the note and beneficiary of the two deeds of trust. Specifically, Santwire pointed out that Umpqua Bank had not provided a copy of the agreement between the FDIC and Umpqua Bank to show its purchase of Evergreen Bank's assets. Santwire asked for a continuance so Umpqua Bank could obtain and provide the documents necessary to establish its interest.

The attorney for Umpqua Bank produced a copy of the 2010 purchase and assumption agreement at the April 23 hearing. The commissioner continued the hearing for two days.

When the hearing resumed on April 25, Santwire reasserted his objection. He argued that because the agreement between Umpqua Bank and the FDIC did not reference specific assets, including the promissory note at issue, the evidence failed to establish Umpqua Bank's interest in the note. Umpqua Bank's attorney offered to retrieve and present the actual promissory note or present the testimony of a bank officer who was present in the courtroom and could testify that the bank had physical possession of the promissory note and had not sold the debt to a third party. The court agreed to hear the testimony. Lynette Chen-Wagner, vice president and asset resolution officer for Umpqua Bank, testified that she was the manager of the loan at

---

[2] Umpqua Bank began foreclosure proceedings on the Beach Drive property in 2011, but terminated those proceedings before initiating this action for receivership.

3

issue, that the bank possessed the actual note and deeds of trusts, and that the bank had not sold its interest in the note.

Following this testimony, the commissioner determined "that Umpqua Bank has standing, that they own the note, that they have possession, dominion, and control over it, that they have the right to enforce it."[3] When it became apparent that the commissioner was preparing to enter the order to appoint a receiver, Santwire's counsel expressed surprise because he believed his client would have the opportunity to testify. The commissioner stated that he had heard all of the testimony needed to address Santwire's challenge to Umpqua Bank's standing, and pointed out that Santwire had ample opportunity to submit material evidence by means of a declaration.

The court entered an order appointing a custodial receiver. The court found appointment of a receiver appropriate both in accordance with the deeds of trust and under the court's statutory authority.

Santwire filed a motion to revise. Again, he asserted that Umpqua Bank had not established its interest as the successor beneficiary of Evergreen Bank and therefore, had no standing to pursue a receivership. Santwire also challenged the commissioner's decision to deny his request to testify and offer exhibits at the April 25 hearing, and asserted that receivership was unnecessary because other remedies would have been sufficient to address the alleged problems.

---

[3] Report of Proceedings (RP) (Apr. 25, 2012) at 13. The commissioner further noted that Santwire initially recognized Umpqua Bank's right to manage and collect the proceeds from the loan.

The motion was heard by a King County Superior Court judge. Umpqua Bank produced the original promissory note at the hearing, but the court declined to consider any new evidence. Nevertheless, considering that the bank sought receivership as provided for in the deeds of trust, as opposed to judgment on the note, the court concluded that the sworn testimony that the bank possessed the original note was sufficient to establish its interest. The court concluded that transfer of Evergreen Bank's assets "was effectuated through the bulk sale, which was overseen by the FDIC, and that should be sufficient."[4] The court rejected Santwire's claim that he was denied the opportunity to defend because he was able to respond to the bank's petition and was not prohibited from submitting any evidence in support of his position. The court denied the motion for revision.

## ANALYSIS

In ruling on a motion for revision, the superior court reviews the commissioner's decisions de novo based upon the evidence and issues presented to the commissioner.[5] We review the decision of the superior court.[6] When the superior court denies a motion for revision, it has the effect of adopting the commissioner's rulings as

---

[4] RP (May 17, 2012) at 13.

[5] In re Marriage of Moody, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999).

[6] Boeing Emps. Credit Union v. Burns, 167 Wn. App. 265, 270, 272 P.3d 908, review denied, 175 Wn.2d 1008, 285 P.3d 885 (2012).

its own.[7] When the record is entirely documentary, an appellate court stands in the same position as the trial court and reviews the record de novo.[8]

A receiver is "a person appointed by the court as the court's agent, and subject to the court's direction, to take possession of, manage, or dispose of property of a person."[9] The power to appoint a receiver is discretionary.[10] A trial court abuses its discretion when its decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons."[11]

*Standing/Party in Interest*

Santwire contends that Umpqua Bank lacked standing to initiate receivership proceedings. Consistent with his position below, Santwire claims that Umpqua Bank failed to prove it is the owner and holder of the note because it did not produce the actual note nor evidence of a written endorsement transferring Evergreen Bank's interest to Umpqua Bank.

The deed of trust act, chapter 61.24 RCW, governs transactions in which a lender issuing a promissory note or other debt instrument to a borrower utilizes a deed

---

[7] State ex rel. J.V.G. v. Van Guilder, 137 Wn. App. 417, 423, 154 P.3d 243 (2007); see also In re Marriage of Williams, 156 Wn. App. 22, 27-28, 232 P.3d 573 (2010).

[8] Hous. Auth. of City of Pasco & Franklin County v. Pleasant, 126 Wn. App. 382, 387, 109 P.3d 422 (2005).

[9] RCW 7.60.005(10).

[10] King County Cmty. & Human Servs. v. N.W. Defenders Ass'n, 118 Wn. App. 117, 122, 75 P.3d 583 (2003).

[11] T.S. v. Boy Scouts of Am., 157 Wn.2d 416, 423, 138 P.3d 1053 (2006) (internal quotation marks omitted) (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

of trust to secure a promissory note or other debt of the borrower.[12] The borrower becomes the grantor of the deed of trust and the lender is the beneficiary.[13] A trustee holds title to the property in trust for the lender.[14] In the event the borrower defaults on his or her debt or other obligation, the beneficiary may direct the trustee to foreclose pursuant to a trustee's sale without judicial supervision.[15]

Before issuing notice of a trustee's sale, the trustee must "have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust."[16] However, in the context of lawsuits seeking to enjoin foreclosure proceedings or set aside trustee sales, several courts, including federal courts in Washington applying the deed of trust act, have rejected the argument that this requirement means that a lender must produce the original signed promissory note before it can lawfully foreclose.[17] The statute itself establishes a means for the lender to satisfy the proof requirement: "A declaration by the beneficiary made under penalty of

---

[12] Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 92-93, 285 P.3d 34 (2012).

[13] Id.

[14] Id.

[15] Id.

[16] RCW 61.24.030(7)(a); see also Bain, 175 Wn.2d at 93-94 (trustee has statutory obligation to obtain proof of beneficiary's ownership of the note as element of its duty to the grantor of the deed of trust).

[17] See, e.g., Beaton v. JPMorgan Chase Bank N.A., Case No. C11–872RAJ, 2013 WL 1282225 at *4 (W.D. Wash. March 26, 2013); Petree v. Chase Bank, No. 12–CV–5548–RBL, 2012 WL 6061219, at *2 (W.D. Wash. Dec. 6, 2012); Hogan v. Washington Mutual Bank, N.A., 230 Ariz. 584, 586, 277 P.3d 781, 783 (2012); Diessner v. Mortg. Elec. Registration Sys., 618 F. Supp. 2d 1184, 1187 (D. Ariz. 2009).

perjury stating that the beneficiary is the actual holder of the promissory note . . . shall be sufficient proof as required under this subsection."[18]

This case does not involve nonjudicial foreclosure. But we can analogize to these provisions because Umpqua Bank also seeks to enforce a remedy provided for in the deed of trust. The evidence shows, and Santwire does not dispute, that the FDIC was appointed as receiver of Evergreen Bank. Umpqua Bank submitted evidence of the 2010 purchase and assumption agreement, the method by which the FDIC transferred its interest in the failed bank's assets to Umpqua Bank. The agreement provides that, subject to certain specific exceptions not applicable here, "Receiver hereby sells, assigns, transfers, conveys, and delivers to the Assuming Bank, all right title, and interest of the Receiver in and to all of the assets . . . of the Failed Bank."[19] The bank also submitted copies of the promissory note and related instruments, including the deeds of trust and assignments of rent. Finally, the court considered sworn testimony of the bank's vice president and asset resolution officer that the bank had not sold the note and has physical possession of it. This evidence would satisfy the lender's proof requirement under RCW 61.24.030(7).[20]

Santwire relies on a Uniform Commercial Code (UCC) provision, chapter 62A.3-203 RCW, "Transfer of instrument; rights acquired by transfer," which provides that a negotiable instrument is transferred when "delivered by a person other than its issuer for

---

[18] RCW 61.24.030(7)(a).

[19] Clerk's Papers at 302.

[20] See Pierson v. SMS Financial II, LLC, 959 S.W.2d 343, 348-49 (Tex. App. 1998) (affidavit from records custodian that FDIC transferred note and that it owned the note, together with photocopy of the note, was sufficient evidence to establish that the lender owned and held the note).

8

the purpose of giving to the person receiving delivery the right to enforce the instrument."[21] Guided by UCC definitions under RCW 62A.3-201 and -301, the Supreme Court in <u>Bain v. Metropolitan Mortgage Group, Inc.</u> determined that a beneficiary must either actually possess the promissory note or be the payee.[22] Santwire does not cite any UCC provision, or any other legal authority, suggesting that a promissory note may not be transferred in a bulk asset transfer agreement such as the one here between the FDIC and Umpqua Bank. Nor does Santwire point to any authority suggesting that in this context, the lender did not sufficiently prove that it is both the possessor and beneficiary of the note.

Santwire also cites the best evidence rule. Under ER 1002, the original is required to prove the content of a writing, recording, or photograph. But under ER 1003, duplicates are admissible to the same extent as the original unless "a genuine question is raised as to the authenticity of the original" or "in the circumstances it would be unfair to admit the duplicate in lieu of the original." Although Santwire argued that production of the actual note was required, he did not object to the admissibility of a duplicate under the evidentiary rules. Nor does Santwire identify any genuine issue as to authenticity or articulate why admission of a duplicate was unfair.

*Right to Present Evidentiary Testimony*

Santwire contends he was denied his right to testify at the April 25 hearing. He claims his testimony would have refuted Umpqua Bank's position that the properties were not being maintained. But Santwire fails to establish that he had a right to present

---

[21] RCW 62A.3-203(a).

[22] <u>Bain v. Metro. Mortg. Group, Inc.</u>, 175 Wn.2d 83, 103-04, 285 P.3d 34 (2012).

live testimony at the hearing. Santwire points out that with respect to receivership proceedings, a "creditor or other party in interest has a right to be heard with respect to all matters affecting the person" whether or not a party to the action.[23] But Santwire was heard in this matter. He was permitted to respond to Umpqua Bank's action in briefing and oral argument. Nothing prevented Santwire from presenting evidence in support of his response, including declaration testimony. King County local rules provide that motion practice rules apply to receivership petitions.[24] Nothing in these rules requires evidentiary testimony and fact finding.[25]

Santwire's counsel explains that he was led to believe there was no need to submit declaratory evidence because the commissioner indicated that his client would be permitted to testify. But Santwire misinterprets the record. When the commissioner decided to continue the hearing on April 23, Umpqua Bank's counsel asked whether she should be prepared to present certain documents. The commissioner replied, "Bring whatever you want, Counsel."[26] Santwire's counsel asked whether he would have an opportunity at the next hearing to respond to the asset transfer agreement, the commissioner said he could respond "with whatever" he wished.[27] These exchanges do not suggest that the commissioner agreed to conduct an evidentiary hearing or consider

---

[23] RCW 7.60.190(2).

[24] LCR 66(2).

[25] LCR 7.

[26] RP (Apr. 23, 2012) at 9.

[27] Id. at 10.

live testimony. Neither party asked about presentation of testimony, and up to that point, Santwire had raised no objection to the bank's factual allegations.[28]

Although Santwire argues that the commissioner's decision denying his request to present testimonial evidence violated his constitutional right to due process, the facts are not comparable to the cases upon which he relies.[29] Santwire was aware of Umpqua Bank's allegations regarding the maintenance of the properties and the need for a receivership to protect the assets for a month prior to the April 23 hearing. Santwire never challenged the bank's assertions with regard to its inability to collect rent. Nor did he challenge the bank's claims as to lack of maintenance until he filed a supplemental response on April 25, the date of the reconvened hearing. Santwire cannot demonstrate that the court's ruling on his last minute request to testify deprived him of a meaningful opportunity to respond in this proceeding.[30]

### Evidence of Reasonable Necessity

Santwire contends that even if Umpqua Bank has standing to enforce the remedies provided under the deed of trust, the appointment of a receiver was an abuse of discretion because the evidence did not show that a receiver was reasonably

---

[28] Santwire filed a supplemental response on April 25, the day of the reconvened hearing, and argued for the first time that a receivership was unnecessary because the bank exaggerated the extent of needed repairs.

[29] See Baxter v. Jones, 34 Wn. App. 1, 2-4, 658 P.2d 1274 (1983) (in order to conclude trial by the end of the day, trial court terminated cross-examination before counsel could pursue questions related to a key issue in the dispute); In re Marriage of Ebbighausen, 42 Wn. App. 99, 102, 708 P.2d 1220 (1985) (father's due process rights violated when the court resolved a joint custody issue in chambers and failed to hear testimony concerning the merits of both parties' custody request).

[30] See Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

necessary.[31] He insists that other adequate remedies were available, such as judicial foreclosure or injunctive relief. He also claims that the bank exaggerated the disrepair and that the order appointing a receiver exceeded the scope of the established necessity.

But the deed of trust expressly provides for the remedy of receivership upon default. Umpqua Bank provided documentary evidence to establish that (1) Santwire defaulted on the note; (2) the bank was not able to fully enforce the assignment of rent agreements due to Santwire's interference; (3) the bank had not received payments under the pledged promissory note in accordance with the commercial pledge agreement; and (4) the property had not been maintained and/or repaired in accordance with the grantor's maintenance duties under the deeds of trust. While Santwire asserts that receivership was unnecessary, there is no evidence in the record to controvert these facts. Santwire did not argue in favor of alternative remedies before the commissioner, nor did he challenge the scope of the receivership. The bank asserted below that there were no adequate alternative remedies in light of the inability to collect rents and the need to prepare the properties for sale. In view of the evidence demonstrating a risk of loss of value, Santwire fails to demonstrate that the commissioner abused his discretion in granting the order to appoint a receiver.

---

[31] See RCW 7.60.025(1) (receiver may be appointed if the court determines "the appointment of a receiver is reasonably necessary and that other available remedies either are not available or are inadequate").

*Attorney Fees*

Umpqua Bank contends it is entitled to an award of attorney fees incurred in defending this appeal. Both the promissory note and deeds of trust contain provisions obligating Santwire to pay fees and costs incurred in enforcing the terms of the loan under the note and deeds. These provisions both expressly provide for fees on appeal. Accordingly, we grant Umpqua Bank's request for fees upon compliance with RAP 18.1(d).

Affirmed.

WE CONCUR: