**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Marriage of<br>MICHELLE CLARENE ABBESS,<br><br>Respondent,<br><br>and<br><br>PHILLIP JAMES ABBESS,<br><br>Appellant. | No. 82358-2-I<br>(consolidated with No. 81415-5-I)<br><br><br>PUBLISHED OPINION |

BOWMAN, J. — Phillip Abbess appeals the trial court's order granting Michelle Abbess' petition to relocate their child to Oregon. Phillip[1] argues that the trial court should have ruled on his request for substantially equal residential time before considering Michelle's petition to relocate at trial. He contends the trial court erred by setting aside evidence presented at trial, turning instead to the residential schedule established in a temporary order to apply the relocation factors. We agree. When both a residential schedule and a petition to relocate are contested issues at trial, a trial court must determine whether one parent is entitled to a majority of residential time using criteria for a permanent residential schedule before applying the relocation factors. Because the trial court instead relied on a temporary residential schedule to resolve the contested issue of residential time and apply the relocation factors, we reverse and remand.

---

[1] We refer to Phillip Abbess and Michelle Abbess by their first names for clarity. We mean no disrespect.

Citations and pin cites are based on the Westlaw online version of the cited material.

No. 82358-2-I (consol. with No. 81415-5-I)/2

FACTS

Phillip and Michelle married in 2015 and had a daughter, S.A., in 2017. They separated in July 2019 and Michelle petitioned for dissolution in August 2019. Michelle immediately sought to restrict Phillip's residential time with S.A., alleging he abused alcohol and drugs. Based on those allegations, a superior court commissioner issued an ex parte order placing S.A. with Michelle. The court allowed Phillip one professionally supervised visit of up to two hours per week.

In January 2020, the parties agreed to a temporary parenting plan under which S.A. stayed with Michelle most of the time. Phillip received alternating weekends with S.A. plus an overnight every other Tuesday and Thursday, giving him four overnights every two weeks. Phillip said he agreed to the plan to have as much time as possible with S.A. until he could convince the court that Michelle's allegations of alcohol and drug abuse were unfounded. After arbitration in April 2020, Phillip received one more night of visitation every two weeks.

On July 1, 2020, Michelle filed a notice of intent to relocate with S.A. to Gold Hill, Oregon. She said that she was having trouble finding a job and there was one waiting for her in Oregon, that she wanted to move closer to family who could help with childcare, and that she was losing her housing and there was a much more affordable apartment available for her to rent in Gold Hill. Phillip objected. Michelle then moved for a temporary order to relocate, which Phillip also opposed. The court denied Michelle's request "pending a final decision

2

during mediation or trial" and ordered she "must not move with the child before the court makes a final decision about the move at trial."

In October 2020, the court held a six-day trial. Phillip presented evidence that he had no substance abuse issues and asked that he and Michelle share equal residential time with three-and-a-half-year-old S.A. He also opposed Michelle's petition to relocate with S.A. In closing argument, Phillip asked the court to allocate a permanent residential schedule based on evidence presented at trial before considering Michelle's petition to relocate. His attorney argued that "to forego the application of the [parenting] statute and dive straight into the relocation factors would defy the purpose of the statute."

Michelle urged the court first to consider her request to relocate with S.A. She claimed she was entitled to a presumption of relocation based on her majority residential schedule under the temporary parenting plan. Her attorney argued, "[I]n making an initial determination of a permanent parenting plan, a parent's intention to relocate with the child must be considered. And to the extent they conflict, the factors in determining [a] parenting plan . . . are superseded by the relocation factors."

After trial, the court entered extensive "Findings and Conclusions about a Marriage." It concluded that it should first analyze relocation using the residential schedule in the temporary parenting plan to determine that Michelle enjoyed a majority of residential time and apply a rebuttable presumption in favor of relocation. The court then found that Phillip failed to rebut the presumption sufficiently and granted Michelle's motion to relocate. Turning next to the

3

permanent residential schedule, the court determined that Michelle's allegations of substance abuse were unfounded and her testimony on the matter was "not credible." But because Michelle and S.A. would now be living in Oregon, the court entered a permanent "long-distance" residential schedule that gave Phillip visitation one "long weekend" per month in Seattle "and an optional second weekend in Gold Hill."

Phillip appeals.

ANALYSIS

Phillip argues that the trial court erred by refusing to determine whether the evidence presented at trial warranted equal residential time under the criteria for establishing a permanent residential schedule in Washington's Parenting Act of 1987, RCW 26.09.187, before considering relocation under the child relocation act (CRA), RCW 26.09.405 to .560. According to Phillip, that error deprived him of a meaningful opportunity to litigate equal residential time. We agree.

We review the provisions of a parenting plan for abuse of discretion. In re Marriage of Littlefield, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997). We also review a trial court's decision to grant or deny a petition for relocation for abuse of discretion. See In re Marriage of Horner, 151 Wn.2d 884, 893, 93 P.3d 124 (2004). A trial court abuses its discretion if its decision is unreasonable or based on " 'untenable grounds or reasons.' " Id. (quoting State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997)).

> "A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; [and] it is based on

4

untenable reasons if it is based on an incorrect standard or the
facts do not meet the requirements of the correct standard."

Horner, 151 Wn.2d at 894 (quoting Littlefield, 133 Wn.2d at 47).

We review issues of statutory construction de novo.  In re Marriage of Watson, 132 Wn. App. 222, 230, 130 P.3d 915 (2006); In re Marriage of Hansen, 81 Wn. App. 494, 498, 914 P.2d 799 (1996).  In doing so, our main purpose is to give effect to legislative intent.  In re Adoption of T.A.W., 186 Wn.2d 828, 840, 383 P.3d 492 (2016).  Our review begins with the plain language of the statute.  State v. Liden, 138 Wn. App. 110, 117, 156 P.3d 259 (2007).  We give effect to all the language in the statute and do not render any portion meaningless or superfluous.  In re Marriage of C.M.C., 87 Wn. App. 84, 87-88, 940 P.2d 669 (1997), aff'd, 136 Wn.2d 800 (1998).  We must read statutory provisions in a manner consistent with the statutory scheme as a whole and avoid absurd or unjust results.  State ex rel. Peninsula Neigh. Ass'n v. Dep't of Transp., 142 Wn.2d 328, 342, 12 P.3d 134 (2000); Flanigan v. Dep't of Labor & Indus., 123 Wn.2d 418, 426, 869 P.2d 14 (1994).

The Parenting Act anticipates that the court will craft a child's permanent residential schedule based on the best interests of the child, as they can be determined at the time of trial.  Littlefield, 133 Wn.2d at 52.  In doing so, the court considers the following factors:

(i)  The relative strength, nature, and stability of the child's relationship with each parent;
(ii)  The agreements of the parties, provided they were entered into knowingly and voluntarily;
(iii)  Each parent's past and potential for future performance of parenting functions as defined in . . . RCW 26.09.004([2]), including whether a parent has taken greater responsibility for

5

performing parenting functions relating to the daily needs of the child;

(iv)  The emotional needs and developmental level of the child;

(v)  The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;

(vi)  The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and

(vii)  Each parent's employment schedule, and shall make accommodations consistent with those schedules.

Factor (i) shall be given the greatest weight.

RCW 26.09.187(3)(a).

The CRA governs the process for relocating the primary residence of a child who is the subject of a court order for residential time.  In re Marriage of McNaught, 189 Wn. App. 545, 553, 359 P.3d 811 (2015).  Under RCW 26.09.520, the court considers several factors to determine whether the harm of a proposed relocation outweighs its benefits:

(1)  The relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life;

(2)  Prior agreements of the parties;

(3)  Whether disrupting the contact between the child and the person seeking relocation would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation;

(4)  Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191;

(5)  The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation;

(6)  The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;

(7)  The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;

          (8)  The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;
          (9)  The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;
          (10)  The financial impact and logistics of the relocation or its prevention; and
          (11)  For a temporary order, the amount of time before a final decision can be made at trial.

These factors are not weighted or listed in any particular order.  RCW 26.09.520; Horner, 151 Wn.2d at 887.

If the relocating parent enjoys a majority of the child's residential time, the CRA creates "a rebuttable presumption that the intended relocation of the child will be permitted."  RCW 26.09.520; McNaught, 189 Wn. App. at 553.  A parent opposing relocation "may rebut the presumption by demonstrating" by a preponderance of the evidence "that the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person."  RCW 26.09.520; McNaught, 189 Wn. App. at 553-54.

But if both parents have "substantially equal residential time," the presumption favoring relocation does not apply.  RCW 26.09.525(1)(a).  Instead, the court "shall make a determination in the best interests of the child considering the factors set forth in RCW 26.09.520."  RCW 26.09.525(1)(b).  "Substantially equal residential time" includes any arrangement in which the child spends 45 percent or more of the time with each parent.  RCW 26.09.525(2).  Generally, the court determines whether the parties have substantially equal residential time based on "the amount of time designated in the court order."  RCW

7

26.09.525(2)(b).  A "court order" is either a temporary or a permanent parenting

plan.  RCW 26.09.410(1).

Michelle argues the trial court properly considered her petition to relocate

first.  She contends the plain language of the CRA supports the court's decision

to look to the January 2020 agreed temporary parenting plan to establish a

residential schedule for the relocation analysis because it says the court can rely

on any "court order."[2]  But Michelle's argument ignores the posture of the

controversy before the court—contested requests for a permanent residential

schedule and a relocation order at trial.

Our legislature has expressed a preference that permanent orders rest on

evidence presented at trial unprejudiced by temporary orders.  See RCW

26.09.191(5) (when issuing statutory restrictions in a permanent parenting plan,

the court shall not draw any presumptions from the provisions of the temporary

parenting plan), .060(10)(a) (a temporary maintenance order, child support order,

restraining order, or preliminary injunction does not prejudice the rights of a party

or any child that are to be adjudicated at later hearings in the proceeding).  This

is because temporary orders serve a different purpose than permanent orders

and are issued based on different criteria and evidentiary standards.  See RCW

26.09.004(4) (temporary parenting plans are a means for parenting a child

pending issuance of a permanent plan), .197(2) (when establishing a residential

---

[2] Michelle points to In re Marriage of Kim, 179 Wn. App. 232, 317 P.3d 555 (2014), in support of her argument.  In that case, the trial court considered both a father's request for a majority residential schedule and a mother's request to relocate at trial.  Id. at 236-38.  After trial, the court first analyzed the CRA factors relying on a temporary residential schedule and granted the petition to relocate.  Id. at 239.  But neither party challenged the court's procedure on appeal, so Kim does not address the issue.  See Id. at 241-42 (father argues trial court applied wrong legal standard and relocation analysis should focus on the best interests of only the children).

schedule in a temporary parenting plan, the court must give particular

consideration to "[w]hich parenting arrangements will cause the least disruption

to the child's emotional stability while the action is pending"), .197 (court may

issue a temporary parenting plan under relaxed evidentiary standards using only

testimony provided by affidavit). But here, the trial court relied on a temporary

parenting plan instead of the evidence presented at trial to determine with whom

S.A. should reside a majority of the time when considering Michelle's petition for

a permanent relocation order.

The court's decision led to the unjust result of presuming relocation using

stale and discredited evidence from a negotiated temporary order that both

parties planned to contest at trial and ultimately deprived Phillip of a meaningful

opportunity to litigate equal residential time.[3] Phillip denied Michelle's substance

abuse allegations throughout the dissolution proceedings and testified that he

agreed to the temporary residential schedule only so he could enjoy some

visitation with S.A. until he could disprove Michelle's allegations. Over the

course of a six-day trial, Phillip presented evidence that he was drug and alcohol

free. The court determined Phillip's evidence to be credible and rejected

Michelle's claims that substance abuse warranted parenting restrictions. But the

court failed to use the evidence to determine the contested issue of whether

---

[3] Michelle argues the court's analysis did not prejudice Phillip because the result would be the same had the court first ruled on a permanent residential schedule. She suggests the court would have awarded her the majority of residential time regardless because she "has always been S.[A.]'s primary parent and is far more attuned with her needs." We are not convinced that the evidence at trial supports such a foregone conclusion. Even so, Phillip was entitled to a meaningful opportunity to argue his case before the court deprived him of the custody and companionship of his child. See In re Marriage of Ebbighausen, 42 Wn. App. 99, 102, 708 P.2d 1220 (1985).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Phillip should enjoy substantially equal residential time. Instead, it set the evidence aside and turned to relocation. The court then treated the nine-month-old temporary order shaped by allegations the court knew not to be credible as if it resolved the issue of where S.A. should reside the majority of the time and used it to support a presumption of relocation. Only after approving relocation did the court consider the evidence Phillip presented at trial. But it did so "in light of the geographical distance between the mother and father."

We conclude that when both a residential schedule and a petition to relocate are contested issues at trial, a trial court must determine whether one parent is entitled to a majority of residential time using criteria for a permanent residential schedule before applying the relocation factors. Because the trial court relied instead on a temporary residential schedule to resolve the contested issue of residential time and apply the relocation factors, we reverse and remand for further proceedings consistent with this opinion.

Brennan, J

WE CONCUR:

Smith, A.C.J.                    Dwyer, J.