IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JACOB HAMBLEN, in his capacity as Personal Representative of the ESTATE OF MICHAEL O. HAMBLEN, Deceased, and MIKE'S AUTO EXCHANGE, LLC, a Washington Limited Liability Company, | ) ) ) ) ) ) | No. 39922-2-III |
| Respondent, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| GREGORY HAMBLEN, and GEOFF HAMBLEN, individually as beneficiaries of the ESTATE OF MICHAEL O. HAMBLEN, | ) ) ) ) ) | |
| Appellants. | ) ) | |

LAWRENCE-BERREY, C.J. — Brothers Gregory Hamblen and Geoff Hamblen appeal the trial court's order denying their motion to vacate two orders entered almost nine months prior to their motion. They argue (1) procedural irregularities caused the orders to be void, warranting relief under CR 60(b)(5), and (2) their attorney's failure to appear at the hearing in which the orders were entered effectively deprived them of counsel, warranting relief under CR 60(b)(11).

With respect to CR 60(b)(5), we conclude that the procedures followed did not violate the brothers' due process rights, and that the various procedural irregularities complained of are insufficient to cause the orders to be void.

With respect to CR 60(b)(11), where an attorney's inactions effectively deprive a diligent but unknowing client of representation, a trial court may vacate the underlying order. *Barr v. MacGugan*, 119 Wn. App. 43, 48, 78 P.3d 660 (2003). We discuss and distinguish *Barr*, and conclude that the trial court did not abuse its discretion when denying the motion to vacate.

We affirm and award Jacob Hamblen, in his capacity as personal representative, his costs, including his reasonable attorney fees.

FACTS

In November 2020, Michael Hamblen, with the assistance of his estate planning attorney, executed a written agreement transferring his business, Mike's Auto Exchange, LLC, to two of his sons, Jacob Hamblen and Jeramie Hamblen.

Michael[1] died intestate on January 3, 2021, leaving real properties and personal effects to be distributed. When Jacob sought to be appointed personal representative of his father's estate, his brothers Gregory and Geoff objected, accusing Jacob of stealing

---

[1] Because the father and the brothers share the same last name, we refer to them by first name for clarity. We mean no disrespect.

2

estate property and other wrongful conduct. After a hearing, the trial court appointed

Megan Lewis—a local attorney favored by Gregory and Geoff—to serve with Jacob as

co-personal representatives.

Ms. Lewis met with Gregory and Geoff and asked them for documentation to

support their claim that Jacob had stolen estate assets. In April 2021, Ms. Lewis learned

that Gregory and Geoff had accessed the property where Mike's Auto Exchange did

business. Ms. Lewis spoke to the brothers' attorney, and advised him that the brothers

had no right to access the dealership's property. Although Geoff had a written lease with

his father involving the dealership building and property, the agreement's provisions

contained the following handwritten notation, "THERE IS NO CHARGE FOR RENT."

Clerk's Papers (CP) at 17-18. Ms. Lewis explained to the brothers' attorney that the

lease agreement was invalid because it was not supported by consideration.

In an October 2021 letter, Ms. Lewis summarized the status of her pending

distribution of estate assets. She wrote that Mike's Auto Exchange, LLC was not an

estate asset, as it had been gifted to Jacob and Jeramie prior to their father's death.

However, the land on which the business operated was in their father's name, and

accordingly remained estate property. Ms. Lewis reported that she had found no

evidence to support the brothers' claim that Jacob had stolen estate assets, and explained

3

that the estate's various real properties were undergoing appraisal. Ms. Lewis assured all brothers that they would receive equal shares.

On July 31, 2022, Gregory and Geoff broke into Mike's Auto Exchange. They caused damage to dealership property, appropriated and later sold or disposed of numerous valuable items of estate and dealership property, and told officers investigating the break-in that Geoff had a valid lease. Days later, Ms. Lewis resigned as co-personal representative.

On August 9, 2022, Jacob, in his capacity as personal representative, and Mike's Auto Exchange, LLC, filed a TEDRA[2] petition against Gregory and Geoff. The petition accused the brothers of interfering with the administration of the estate. Specifically, Jacob's petition accused Gregory and Geoff of absconding with estate and dealership property. The petition also accused Gregory and Geoff of trespass and tortious interference with the dealership. As relief, Jacob's petition sought "a temporary and preliminary injunction" prohibiting Gregory and Geoff from further interference with the dealership's and the estate's assets, while noting that "permanent injunctive relief" was warranted as well. CP at 9. The petition also sought replevin of estate and dealership assets that Gregory and Geoff had stolen, along with damages flowing from Jacob's trespass and business interference claims. Concurrent with filing the petition, Jacob

---

[2] Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW.

4

sought and obtained a temporary restraining order granting relief consistent with the

petition, and the court set a preliminary injunction hearing for August 23, 2022.

*Preliminary injunction*

After considering dueling declarations and argument from both sides' counsel, the

trial court issued a preliminary injunction that renewed the requirements the temporary

restraining order had imposed on Gregory and Geoff. Additionally, the preliminary

injunction prohibited Jacob from accessing the property where he operated Mike's Auto

Exchange. By its terms, the preliminary injunction "remain[ed] in effect until the initial

hearing on the merits of [Jacob's] TEDRA Petition . . . unless otherwise ordered by the

Court." CP at 46.

*Note for TEDRA hearing, motion for reconsideration, and motion for contempt*

Jacob noted his initial TEDRA hearing for September 23, 2022. In his note, Jacob

informed Gregory and Geoff that the hearing would address the TEDRA petition "along

with a Motion for Reconsideration" of the trial court's preliminary injunction. CP at 790.

Two days later, Jacob filed that motion for reconsideration, arguing that the trial court's

injunction had unfairly burdened his business activities and prevented him from fulfilling

his role as the estate's co-personal representative. Jacob's motion also sought a contempt

finding against Gregory and Geoff on the grounds that they had not complied with the

court's order to return the stolen property.

*Initial TEDRA hearing*

Gregory and Geoff did not furnish this court with a transcript of the initial TEDRA hearing. Nevertheless, we can glean what happened at the hearing from the record before us.

Four days before the hearing, Gregory and Geoff's attorney, W. Timothy Seibly, filed a request for continuance, stating that he would be unavailable on September 23. The hearing proceeded notwithstanding Mr. Seibly's request, and Gregory, Gregory's daughter, Geoff, and Geoff's wife attended the hearing without representation. The trial court at the initial TEDRA hearing heard argument from Jacob's attorney, and only afterward realized that Gregory and Geoff were in attendance. Gregory and Geoff asked the court for a continuance. The court declined, explaining that speaking with Gregory and Geoff outside the presence of their counsel was impermissible, and said it was prepared to rule. One of the brothers then angrily left the courtroom. The trial court announced its ruling in favor of Jacob, and directed counsel to prepare written orders consistent with its rulings. At this point, the other brother, along with Gregory's daughter and Geoff's wife left the courtroom. Jacob's counsel prepared the permanent injunction and the TEDRA order, and the trial court returned to the bench and signed it.

The permanent injunction enjoined Gregory and Geoff from accessing the dealership property or otherwise interfering with estate assets. The injunction further

6

required Gregory and Geoff to return dealership and estate assets in their possession.

Along with the injunction, the court entered findings of fact stating that Michael had

transferred his business to Jacob and Jeramie before his death, that the brothers had

trespassed on estate property on July 31, 2022, and that, when trespassing, the brothers

had taken valuable estate and dealership property.  The order concluded that Gregory and

Geoff were liable for trespass and for intentional interference with Jacob's car dealership,

and required the brothers to return estate and dealership assets.  The order reserved for a

future hearing Jacob's motion for contempt and monetary sanctions.  After the hearing,

Jacob's counsel promptly provided Mr. Seibly with a copy of the permanent injunction

and the TEDRA order.

*Second motion for contempt*

Several weeks after the trial court granted Jacob's TEDRA petition, Jacob again

moved for contempt on the grounds that Gregory and Geoff remained in violation of the

court's orders to return dealership and estate property.  Along with his motion, Jacob

submitted evidence that his brothers were selling some of the stolen property online.  In

response to Jacob's motion, the court ordered Gregory and Geoff to appear at a

November 18, 2022 show cause hearing and answer the contempt allegations. The court

later continued the show cause hearing to December 29, 2022.[3]

In response to Jacob's motion, both Gregory and Geoff submitted declarations

disputing whether they were in violation of the court's orders. Both brothers'

declarations were prepared and submitted by Mr. Seibly, who continued to represent the

brothers notwithstanding his failure to appear at the initial TEDRA hearing.

The court at the show cause hearing granted Jacob's request, and imposed $2,000

daily sanctions on Gregory and Geoff until such a time as they complied with the court's

orders to return estate property. The court also awarded Jacob attorney fees and costs.

*Motion to cure*

Two weeks after the trial court imposed daily sanctions, Gregory and Geoff—still

represented by Mr. Seibly—moved to cure contempt on the grounds that they could not

return the property in question.[4] The court granted the motion, and found the brothers

liable to the estate or the dealership for all property not returned. For the 14 days during

---

[3] The record indicates that the trial court issued its show cause order on October 21, 2022—two weeks *before* Jacob filed his motion seeking contempt. Apparently, the documents supporting the motion were provided to the judge on the earlier date but not filed until later. In any event, Jacob's motion and all declarations supporting his motion were filed by November 4, 2022—nearly two months prior to the continued show cause hearing.

[4] Gregory and Geoff did not furnish this court with a copy of their motion to cure contempt. Accordingly, these facts cite the court's order referencing Gregory's and Geoff's motion and ruling thereon.

8

which Gregory and Geoff remained in contempt, the court would eventually order the

brothers to pay $28,000 in remedial sanctions, as well as attorney fees.

*Answer to TEDRA petition and motion to vacate*

On March 3, 2023, notwithstanding the trial court's September 2022 ruling on the

merits of Jacob's petition, Gregory and Geoff, with new counsel, filed an answer to the

petition. One week later, the brothers moved to continue the hearings that Jacob had set

to determine damages related to his trespass and business interference claims. Gregory

and Geoff argued that a continuance was necessary because they intended to bring a

motion to vacate the permanent injunction and the TEDRA order. The court granted the

continuance. Three months later, Gregory and Geoff moved to vacate the orders.

The bothers' motion to vacate—brought in June 2023—partly relied on a

declaration from Amanda Hamblen Garcia, Gregory's daughter. In their accompanying

memorandum, Gregory and Geoff argued:

>    (1) the trial court's orders violated their due process rights;
>    (2) the court improperly combined the hearing on Jacob's motion to
> reconsider the preliminary injunction with the hearing on the merits of
> Jacob's TEDRA petition;
>    (3) Mr. Seibly's conduct so vitiated the attorney-client relationship
> as to deprive Gregory and Geoff of representation; and
>    (4) Jacob's conduct in securing the orders both violated court rules
> and showed bad faith.

*See* CP at 146-67.

9

Jacob moved to strike portions of Ms. Garcia's declaration, and argued those portions failed to show she had personal knowledge of the events described, or alternatively, that the portions were hearsay. In response to this motion, Gregory and Geoff attempted to cure Ms. Garcia's declaration by submitting additional declarations alleging that Ms. Garcia was an agent entitled to testify on the brothers' behalf. The court struck paragraphs 5-15 of Ms. Garcia's declaration.

In a written order, the court denied Gregory's and Geoff's motion to vacate. The court determined that it had jurisdiction over the parties and the subject matter, and therefore the two orders entered at the initial TEDRA hearing were not void. It also determined that the procedures followed prior to entry of the two orders comported with due process. It further found that Mr. Seibly's failure to appear at the initial TEDRA hearing was not gross negligence, and that the brothers were not entitled to vacation of the orders because, despite attending the TEDRA hearing, they did not move to set aside the orders until almost nine months later. Finally, the trial court found that Jacob would incur a substantial financial hardship if the court, after so much delay, were to vacate the orders. Following this, the trial court entered a judgment for $28,000.00 in sanctions, and a judgment for $31,315.90 in attorney fees.

Gregory and Geoff timely appeal the order denying their motion to vacate.

No. 39922-2-III
*Hamblen v. Hamblen*

ANALYSIS

MOTION TO VACATE

Gregory and Geoff argue the trial court abused its discretion by not vacating the

September 23, 2022 permanent injunction and the September 23, 2022 TEDRA order.

We disagree.

*Standard of review*

This court reviews a trial court's denial of a CR 60(b) motion to vacate for abuse

of discretion. *In re Marriage of Persinger*, 188 Wn. App. 606, 608, 355 P.3d 291 (2015).

A trial court operates within its discretion where its findings derive from the factual

record, its conclusions apply sound law, and its decisions are not manifestly

unreasonable. *In re Marriage of Bowen*, 168 Wn. App. 581, 586-87, 279 P.3d 885

(2012). Gregory and Geoff do not assign error to any of the findings supporting either

challenged order, and so we deem those findings verities on appeal. *Stone v. Dep't of

Lab. & Indus.*, 172 Wn. App. 256, 260, 289 P.3d 720 (2012).

1.      *CR 60(b)(5)*

Gregory and Geoff argue that numerous procedural irregularities caused the

permanent injunction and the TEDRA order to be void. We disagree.

CR 60(b)(5) requires a trial court to vacate a void judgment. *Dep't of Lab. &

Indus. v. Fowler*, 23 Wn. App. 2d 509, 525, 516 P.3d 831 (2022), *review denied*, 200

11

Wn.2d 1027, 523 P.3d 1184 (2023). "A judgment is void only if it is issued by a court which 'lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved.'" *In re Det. of Ward*, 125 Wn. App. 374, 379, 104 P.3d 751 (2005) (internal quotation marks omitted) (quoting *Metro. Fed. Sav. & Loan Ass'n of Seattle v. Greenacres Mem'l Ass'n*, 7 Wn. App. 695, 699, 502 P.2d 476 (1972)). "[I]rregularities, even fundamental errors of law, simply render the judgment voidable." *Id.*

Here, Gregory and Geoff do not argue that the trial court lacked jurisdiction over them or the subject matter. Rather, they complain they were surprised that the initial TEDRA hearing resulted in a determination of their rights. But the statute itself empowers trial courts to make such determinations at the initial hearing, or reserve unresolved factual issues for a future hearing. RCW 11.96A.100(8), (10). Here, the trial court resolved many factual issues at the hearing, provided appropriate relief within the framework of its findings, and reserved the question of damages for later hearings.

Gregory and Geoff cite *In re Marriage of Ebbighausen*, 42 Wn. App. 99, 708 P.2d 1220 (1985), as support for their argument that procedures failing to satisfy due process allow a trial court to vacate an order under CR 60(b)(5). As a rule, this is correct.

In *Ebbighausen*, the father appealed a trial court's child custody order. 42 Wn. App. at 100. The father argued that his right to the care, custody, and companionship of

12

his child was violated when the trial court denied him the opportunity to present

testimony in support of his request. *Id.* at 102. There, the trial court made the custody

determination following an in-chambers discussion with the father's attorney, finding that

the father's testimony, as represented by the attorney, would not affect the outcome.

*Id.* at 102-03. In reversing, we concluded that the trial court had violated the father's due

process right by not allowing him to testify. *Id.* We emphasized that a parent's interest

in the custody and control of a child is a sacred right, and that the father's attorney lacked

the authority to surrender this right through an unapproved settlement. *Id.*

As to their own case, Gregory and Geoff argue that their due process rights were

violated because Jacob misled them about the nature of the September 23, 2022 TEDRA

hearing. Specifically, they argue they were misled about what relief Jacob sought

because he combined the notice of the initial TEDRA hearing with his request for

reconsideration of the preliminary injunction, and submitted a prehearing brief focused

on reconsideration rather than the TEDRA relief he sought.

We address the brothers' argument by describing, with particularity, the

communications between counsel leading up to the September 23, 2022 hearing.

On August 22, 2022, counsel for Jacob received Mr. Seibly's notice of appearance

in the TEDRA case on behalf of Gregory and Geoff. The following morning, both

attorneys appeared in court at the preliminary injunction hearing, which Jacob mostly

won.  Later that day, Jacob's counsel e-mailed Mr. Seibly a draft preliminary injunction. In that same e-mail, Jacob's counsel advised Mr. Seibly that he had obtained dates for the initial TEDRA hearing, and asked if he would consent to a September 7, 2022 hearing, even though it was less than the 20-day notice required by RCW 11.96A.110.  Mr. Seibly did not respond.

On August 30, 2023, and in accordance with TEDRA procedures, Jacob's counsel served Mr. Seibly and his clients a notice of hearing, setting the TEDRA hearing and the reconsideration motion for September 23, 2022, reserving two hours for argument.  In addition to the notice of hearing, Jacob's counsel served Mr. Seibly and his clients a copy of the TEDRA summons, the verified TEDRA petition, and a supporting declaration.

On September 19, 2022, Mr. Seibly e-mailed Jacob's counsel a pleading entitled, "Request for Continuance and Notice of Unavailable Dates."  CP at 274.  Jacob's counsel promptly responded by e-mail that he would be contesting the continuance request, explaining that each day the preliminary injunction remains in effect, Jacob is damaged because he cannot operate his dealership.

Mr. Seibly told Gregory and Geoff he was experienced in estate litigation.  An experienced estate litigator would be familiar with TEDRA procedures, and would know that the trial court's aim at an initial TEDRA hearing is to resolve factual and legal disputes, and to enter appropriate orders.  RCW 11.96A.100(8).

There is nothing remarkable about the procedures Jacob used to obtain the permanent injunction and the TEDRA order: the TEDRA petition is very detailed, both with respect to the facts asserted, the legal theories, and the relief requested. Jacob provided Gregory and Geoff with more than the required 20 days' notice of hearing. The relief requested in the petition was consistent with the relief ordered, both with respect to the permanent injunction and the TEDRA order.

In addition, the note for hearing and the intervening e-mails clearly apprised Mr. Seibly that the TEDRA petition would be decided at the two-hour hearing. Mr. Seibly does not claim he was misled; rather, *his clients* claim they were misled. If they were misled, it was due to the failure of Mr. Seibly to explain the TEDRA process to his own clients. *Ebbighausen* has no application here, because neither Jacob nor the trial court deprived the brothers of due process.

2.      *CR 60(b)(11)*

In the alternative, Gregory and Geoff argue that their attorney's failure to appear at the initial TEDRA hearing effectively deprived them of representation such that the trial court abused its discretion by failing to vacate the challenged orders. We disagree.

CR 60(b)(11) authorizes a trial court to vacate an order for any reason justifying relief, other than those listed elsewhere in the rule. CR 60(b)(11) applies only in extraordinary circumstances relating to irregularities that are extraneous to the action of

15

the court. *In re Marriage of Flannagan*, 42 Wn. App. 214, 221, 709 P.2d 1247 (1985).

In *Barr v. MacGugan*, we held that a trial court may vacate a judgment where "an

attorney's condition effectively deprives a diligent but unknowing client of

representation." 119 Wn. App. at 48. A review of this case is warranted to better

understand the rule.

In November 2000, Barr hired an attorney to file suit against MacGugan. *Id.* at

45. In the spring of 2001, Barr's attorney failed to respond to discovery requests. *Id.*

He then failed to comply with an order compelling discovery responses. *Id.* On

December 3, 2001, because of her attorney's noncompliance with the order, the trial court

dismissed Barr's lawsuit with prejudice. *Id.*

In August 2002, Barr learned from her attorney's landlord that her case had been

dismissed, and that her attorney had been suffering from severe clinical depression. *Id.*

Although Barr had received discovery questions from her attorney in March 2001, she

had heard nothing from him since providing her answers to those questions. *Id.* Despite

leaving multiple telephone messages for her attorney in the fall of 2001 and again in the

spring of 2002, Barr never heard from him. *Id.* Importantly, she had no knowledge of

the defendant's motions to compel or dismiss. *Id.* Upon learning that her case was

dismissed, Barr hired new counsel, who in October 2002, successfully obtained an order

that vacated the order of dismissal. *Id.* MacGugan appealed. *Id.*

On appeal, this court noted that CR 60(b) did not permit a trial court to vacate a judgment or order because of an attorney's negligence. *Id.* at 46. We explained the principle that underlies this rule:

> [U]nder the law of agency, if an attorney is authorized to appear on behalf of a client, that attorney's acts are binding on the client. *Haller v. Wallis*, 89 Wn.2d 539, 547, 573 P.2d 1302 (1978). Thus, the attorney's negligence is attributable to the client. *Haller*, 89 Wn.2d at 547.

*Id.*

In *Barr*, we refused to apply the *Haller* rule for three reasons. First, and most important, there was no basis for attributing to Barr her attorney's actions (or inactions). We determined "the agency relationship ha[d] disintegrated to the point where as a practical matter there [was] no representation." *Id.* at 48. Second, Barr was diligent in her case. She made appropriate inquiries, but still did not learn of the events impacting her case. *Id.* Third, we expressed a desire that cases should be decided on their merits. *Id.* at 47.

*Barr* is distinguishable. First, Mr. Seibly prepared pleadings for and appeared on behalf of Gregory and Geoff prior to and after the TEDRA hearing. Accordingly, the agency relationship remained intact throughout the proceeding. We do not know why Mr. Seibly was unavailable for the TEDRA hearing, or why he did not immediately seek reconsideration of those orders. However, to the extent Mr. Seibly was negligent, and to

17

the extent his negligence prejudiced Gregory and Geoff, the brothers would have a remedy, but not in this proceeding.

Second, Gregory and Geoff were not "diligent but unknowing clients" within the meaning of *Barr*. They appeared at the hearing and knew that Jacob prevailed. After receiving copies of the orders, the brothers failed to seek vacation for nearly nine months.

Moreover, *Barr* does not *require* the trial court to vacate a prior order or judgment if the movant meets the rule's requirements; rather, *Barr* in that circumstance grants a trial court *discretion* to vacate. Here, Gregory and Geoff did not meet the rule's requirements. Even if they did, however, the court exercised its discretion in a reasonable manner when it denied the brothers' motion. We affirm the order.

*3. Motion to strike*

Finally, Gregory and Geoff argue that the trial court erred when it struck paragraphs 5-15 of Ms. Garcia's declaration in support of their motion to vacate. Paragraph 5 describes an agreement that Ms. Garcia's grandfather made with her father but that her grandfather rescinded, and a disparaging statement her grandfather made about Jacob. Paragraphs 6-15 provide an overview of the history of the litigation— mostly Gregory and Geoff's interactions with their various lawyers and with Ms. Lewis. There is nothing in the stricken paragraphs that bears upon the merits of the dispute.

There is nothing in those paragraphs that would have altered the trial court's decision below, and nothing that would alter our decision here. Error, if any, was harmless.

COSTS AND ATTORNEY FEES

Jacob requests an award of costs, including reasonable attorney fees, under RAP 18.1 and RCW 11.96A.150.

RCW 11.96A.150(1) permits an appellate court, in its discretion, to award costs, including reasonable attorney fees, to any party within a proceeding, to be paid by any other party to the proceeding. In exercising our discretion, we may consider any factors we deem appropriate. *Id.*

We award Jacob, in his capacity as personal representative, his costs and reasonable attorney fees on appeal. Early on, the former co-personal representative, Ms. Lewis, informed the parties that Geoff's lease was invalid, that Michael had gifted the dealership to Jacob and Jeramie, and that all of their father's land and personal property would be divided equally. Despite this, Gregory and Geoff trespassed on estate property, damaged it, and removed and sold property belonging to the estate and to the dealership. Their actions required Jacob, in his capacity as personal representative, to file this TEDRA action. Jacob and Jeramie should not have their inheritances reduced due to the regrettable choices made by Gregory and Geoff. If they disagreed with Ms. Lewis's conclusions, they should have sought relief in court.

19

No. 39922-2-III
*Hamblen v. Hamblen*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____          _____
Fearing, J.                                                       Cooney, J.